# Henry M. Loud and others v. Colin Campbell and another.

*Charter of a vessel: Contract: Evidence.* In an action upon an agreement for the charter of a vessel, where it appears that part of the agreement was embodied in a letter written by one of defendants, and addressed to defendants' firm, which was handed to the master of the vessel to deliver to those having charge of defendants' affairs at the port where the vessel was to be loaded, the introduction of such a letter in evidence does not preclude the giving of parol evidence as to particulars of the agreement not included in such letter; the letter in question in this case, though made to further the execution of the agreement, was not prepared as a writing having the assent of the parties as embodying their sense of the terms and extent of the agreement, to be appealed to, in case of misunderstanding, as the final proof of the exact stipulations entered into.

*Notice: Default.* In such an action, where it appears that the master of the vessel notified an agent of defendants, who was present at the shipping port, and had charge of the loading of vessels there for defendants, of the arrival of the vessel, and the arrangement made, that defendants' business office was about a mile distant, and that the weather and situation of the vessel were such that the master's presence was required on his vessel, in the absence of any proof that either of defendants was at or near the shipping port, this is a sufficient notification to defendants to put them in default, under the circumstances of this case, for not furnishing a tug to tow the vessel into port, and to tow lighters to the vessel and back, as provided by the agreement.

*Measure of damages:* The measure of damages for failure to furnish a tug to tow the vessel into the port of lading, and to tow lighters to the vessel and back, as agreed by the charter, whereby the plaintiffs were prevented from performing their contract, under the circumstances of this case, was the net profits the plaintiffs might have made if the contract had been performed, and also the actual expenses incurred in their attempts to perform.

*Heard October 30. Decided November 23.*

Error to Wayne Circuit.

*D. C. Holbrook*, for plaintiffs in error.

*Newberry, Pond & Brown*, for defendants in error.

GRAVES, J.

This suit was brought by defendants in error, upon an agreement for the charter of their vessel, the "Jane Ralston," by the plaintiffs in error.

A recovery was had in the court below, and the plaintiffs in error, who were there defendants, complain that the court erred in admitting certain parol evidence of the terms of the agreement, and in rulings relating to the duties of defendants in error under the agreement, and touching the measure of damages. The only witness in the case was the master of the vessel, and he testified, that, being at Detroit with the vessel, the plaintiffs in error, by Mr. Gay, one of their number, agreed with him to go to Au Sauble, where the plaintiffs in error were engaged in business, and take a load of lumber for them. The witness then stated that part of the arrangement so made was in writing, and he produced a paper which had been given to him on the occasion, by the plaintiffs in error, and which purported to be a statement by the firm at Detroit, to the firm at Au Sauble, and appeared to have been given to him to be carried to the business establishment of plaintiffs in error at Au Sauble, for their information.

This paper was of the following tenor:

"DETROIT, Nov. 18, 1869.

"MESSRS. LOUD, PRIEST & GAY:

"Please load the schooner Jane Ralston with lumber, delivered free on the rail for Buffalo, allowing freight thereon at five dollars per thousand feet; also, take the building stone he has, allowing him twelve dollars per toise, we to furnish a horse to hoist with, and allowing three dollars for stamp.

"Yours truly,

"LOUD, PRIEST & GAY.

"Captain says there is ten toise. He will go to Erie at same price, if you prefer."

The paper having been read to the jury, the defendants in error were allowed, under objection, to show by the tes-

timony of the witness, that, in addition to the matters stated in the paper, it was part of the agreement that the plaintiffs in error should have lighters, ready loaded with the lumber to be taken on board, and a tug fired up, ready to take the vessel in and out of the river, and to tow the lighters to the vessel and back.

The witness then further testified, that he at once took the vessel to Au Sauble, and anchored about a mile and a half from the mouth of the river; that he went from thence in his small boat to the mouth of the river, but did not go to the business office of the plaintiffs in error, which was about a mile distant; that it was not a time when offices were generally open; that the first duty in such cases is to report, and look after the safety of the vessel; that he was unable to say whether or not the plaintiffs in error had personal notice of his arrival, and that he had no time to deliver the paper.

He further testified that on getting to the mouth of the river, he called on one Dudgeon, who was foreman at the mills, who attended to the shipping of lumber and was accustomed to give orders to tugs, as to towing vessels in and out, and explained to him the nature of the arrangement, and informed him that the vessel was outside endeavoring to get a load of lumber for plaintiffs in error; that the vessel was then ready to load, and that he, the witness, wanted Dudgeon to furnish the promised facilities; that Dudgeon then replied, " Captain, we are all ready," and directed the master of the tug to leave the vessel at a named dock, where she could discharge the stone; that thereupon the tug fired up, proceeded to the vessel, and hitched on, but that the wind was blowing, and the tug could not control the vessel and keep her from going ashore, and accordingly let go and returned to the mouth of the river,—the captain of the tug saying afterwards that

26 mich.—31.

the tug was out of order and unfit for use; that the vessel remained off the mouth of the river until the next day about noon, the weather being threatening and her position unsafe; that having then stayed there as long as he dared, he took the vessel to Detroit, without having unloaded the stone or taken on the lumber.

He also testified that the vessel would have carried two hundred and forty thousand feet; that the actual expense in going to Au Sauble and back was three hundred and forty dollars and seventy cents; that the actual expense which would have accrued in going to Au Sable, in discharging the stone, in loading with lumber and conveying it to Buffalo or Erie, would have been five hundred and seventy dollars, and that the actual profit of the trip if performed, would have been six hundred and thirty dollars.

The foregoing is in substance the evidence given, the defendants below not submitting any.

The first objection is, that the paper which was given in evidence, was the agreement of the parties as written, and that the evidence of verbal stipulations not contained in it, was improperly admitted. The court think otherwise. The observation of the witness when alluding to the paper, that the agreement was partly in writing, must must have a reasonable construction, and considering the authorship of the writing, its manifest object and the surrounding circumstances, it seems clear enough that all the witness meant or was justified in conveying, was, that some of the terms of the agreement were set forth in the paper. The document was a communication between different establishments of the plaintiffs in error, for their information and convenience, respecting a contract already made. It was intended as a notification on their part, to those having charge of their affairs at Au Sauble, of an arrangement which had been concluded at Detroit, with defend-

ants in error.  It was not prepared as a writing having the assent of the parties as embodying their sense of the terms and extent of the agreement, and to be appealed to in case of misunderstanding, as the final proof of the exact stipulations which· had been entered into.  Though unquestionably made by the plaintiffs in error in order to further the execution of the agreement, the nature of the document and the circumstances, preclude the idea that it was designed to constitute the contract, or to stand as an agreed memorial of it.  The parol evidence given was, therefore, not obnoxious to the rules of exclusion referred to in argument.

The next objection arises upon the refusal to comply with the request of plaintiffs in error, to charge that there was no evidence· that they had any knowledge of the arrival of the vessel, and that the master was not authorized to act upon any thing said by Dudgeon, or the master of the tug.

It will be observed that no question is raised whether the vessel remained a reasonable time before leaving.  The position is, that plaintiffs in error were not put in default, because they were not personally notified of the arrival of the vessel.  The evidence bearing upon this point is pretty plain.  The season was very late, and the position of the vessel such as to call for extreme care and watchfulness.  The parties must be presumed to have contemplated, not only invariable incidents of such a trip and navigation, but also such as were probable and natural at that time of the season.  It is not reasonable to suppose, therefore, that much delay was meditated, or that the master was expected to go far from his vessel.  There is no evidence that either of the plaintiffs in error was at Au Sauble or near there, and in the absence of any such evidence, we have no occasion to inquire whether, in addition

to what was done, personal notice of the arrival of the vessel should have been given. If the position of the plaintiffs in error made such notice impracticable, the master could hardly be considered in default by not giving it.— *Sieveking v. Maas, 36 E. L. & E., 185, 187.* In the present case, it is clear upon the evidence, that Dudgeon was agent for plaintiffs in error, about the mills, and had charge of the business of loading vessels with lumber for them; that he was near the shipping point, while the business office was about a mile distant. He was then the person on the spot, and the only one, so far as the record shows, apparently authorized to manage for the plaintiffs in error. Being so left in charge and in view of the circumstances, he was *prima facie* the proper person to apply to, and duty and necessity forbade delay. The captain notified him at once of the arrangement and of the situation, and he proceeded to act. The attempt failed, and was not renewed or proposed to be renewed. Upon this record Dudgeon must be considered as having represented the plaintiffs in error, and the failure to provide the agencies agreed on to enable the defendants in error to carry out the arrangement, must be regarded as their failure. The rulings on this branch of the case are not subject to the objections taken.

The last objection is directed to the rule of damages given to the jury. The court instructed the jury that the plaintiffs below were entiled to recover the net profits they might have made if the contract had been performed, and also the actual expense out of pocket. The conclusiveness of the evidence on these subjects was not questioned; nor was it made a point that the vessel earned, or might have earned, freight, notwithstanding the default of plaintiffs in error. Indeed, the objection was stated vaguely, and was very faintly pressed.

It appears, without contradiction, that the actual expense, which is not claimed to have been unreasonable, was three hundred and forty dollars and seventy cents; that the freight stipulated for, was five dollars per thousand feet, and that the vessel was able to take two hundred and forty thousand feeet, and that her net earnings would have been six hundred and thirty dollars. By means of the default of the plaintiffs in error, the other parties were actually out of pocket three hundred and forty dollars and seventy cents, and were hindered from earning the clear freight agreed upon. And it is not open to them to contend that the freight stipulated for by the contract might have been defeated by some of the accidents of navigation or otherwise, when their own failure to keep the agreement, prevented the defendants in error from proceeding to perform the acts which were to earn the freight. Nothing seems to have been claimed on account of the non-reception of the stone. The rule given by the court restricted the recovery to a less sum than the stipulated wages, and the court fail to discover any fault in it of which the plaintiffs in error are entitled to complain.

As no error is shown, the judgment should be affirmed, with costs.

The other Justices concurred.