[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 489 
The point made, that the destruction of the mill by fire was an excuse for the non-performance of the contract by the defendant, is not tenable. In the first place, *Page 491 
it does not appear, nor is it found as a fact, that the burning of the mill prevented such performance. The contract was made December twenty-seventh, and the steel caps were to be delivered on the first of April thereafter. The mill burned on the tenth of March; and the proper construction of the finding is, that the defendant was prevented, after that time, from completing the contract, but there was ample time, prior to that event, to have manufactured the caps. A party cannot postpone the performance of such a contract to the last moment and then interpose an accident to excuse it. The defendant took the responsibility of the delay. But the case is not within the principle decided in Dexter v.Norton (47 N.Y., 62), and the authorities upon which it was based. That principle applies when it is apparent that the parties contemplated the continued existence of a particular person or thing which is the subject of the contract, as in the case of the Musical Hall destroyed by fire (3 Best S., 826); in the case of an apprentice who became permanently ill (4 C.P., 1 [L.R.]); and of a woman who, from illness, was unable to perform as a pianist. (6 Ex., 269 [L.R.].) In these and analogous cases a condition is implied that the person or thing shall continue to exist. In Dexter v. Norton (supra), this principle was applied to relieve a party from damages for a failure to deliver property which was burned without his fault, but it has no application to a case of this character. There was no physical or natural impossibility, inherent in the nature of the thing to be performed, upon which a condition that the mill should continue can be predicated. The article was to be manufactured and delivered, and whether by that particular machinery or in that mill would not be deemed material. True, the contract specifies the mill as the place, but it necessarily has no importance, except as designating the place of delivery. For aught that appears, other machinery could have been substituted. The defendant agreed to furnish a certain manufactured article by a specified day, and it cannot be excused by an accident, even if it prevented performance. If it sought protection against such a *Page 492 
contingency it should have been provided for in the contract. (12 N Y, 99; 25 id., 272; 25 Conn., 530.) This case belongs to a class clearly distinguishable from those before referred to.
The more important question relates to the proper rule of damages. The referee finds that, prior to the contract with the defendant, the plaintiff had contracted with the New York Central Railroad Company to sell and deliver to it, by the first of June, 400 tons of rails, to be composed of an iron foundation and steel caps, for the invention of which the plaintiff had obtained a patent; and that when the contract was made with the defendant he informed it that he wanted the caps to perform the contract; that if they had been delivered by the first of April the plaintiff could have performed his contract; and he finds, also, facts showing that the plaintiff would have realized the amount of profits for which the recovery was ordered.
The damages for which a party may recover for a breach of contract are such as ordinarily and naturally flow from the non-performance. They must be proximate and certain, or capable of certain ascertainment, and not remote, speculative or contingent. It is presumed that the parties contemplate the usual and natural consequences of a breach when the contract is made; and if the contract is made with reference to special circumstances, fixing or affecting the amount of damages, such special circumstances are regarded within the contemplation of the parties, and damages may be assessed accordingly. For a breach of an executory contract to sell and deliver personal property the measure of damages is, ordinarily, the difference between the contract-price and the market-value of the article at the time and place of delivery; but if the contract is made to enable the plaintiff to perform a sub-contract, the terms of which the defendant knows, he may be held liable for the difference between the sub-contract-price and the principal contract-price, and this is upon the ground that the parties have impliedly fixed the measure of damages themselves, or, rather, made the contract upon the *Page 493 
basis of a fixed rule by which they may be assessed. The authorities cited on both sides recognize these general rules. (16 N.Y., 489; 114 C.L.R., 445; 7 C.P., 587 [L.R.]; 26 L. and Eq., 398; 34 N.Y., 364; 40 id., 422; 96 C.L.R., 82; 54 N.Y., 586; 3 Q.B., 181 [L.R.]; 102 E.C.L. [1 Ell. Ell.], 602; 3 C.P., 499 [L.R.]; 8 C.P. [L.R.], 131.) The difficulty is in properly applying general rules to the facts of each particular case. Here it is found, in substance, that the contract was made to enable the plaintiff to perform his contract with the railroad company, and that this was known to the defendant. It is insisted, however, that as the price which the railroad company was to pay the plaintiff for the rails was not communicated to the defendant it cannot be said that it made the contract with reference to such price. It is expressly found that there was no market-price for the steel caps, and it does not appear that there was any market-price for the completed rail. The presumption is, from the facts proved, that there was not. It was a new article, and the contract was made to bring it into use. The result of the able and elaborate argument of the learned counsel for the defendant is, that in such a case, that is when, although the contract is made with reference to and to enable the plaintiff to perform a sub-contract, yet if the terms of the sub-contract, as to price, are unknown to the vendor, and there is no market-price for the article, the latter is not liable for any damages, or, what is the same thing, for only nominal damages. I have examined all the authorities referred to, and I do not find any which countenances such a position, and there is no reason for exempting a vendor from all damages in such a case. It is not because the vendee has not suffered loss, as he has lost the profits of his sub-contract; it is not because such profits are uncertain, as they are fixed and definite, and capable of being ascertained with certainty; it is not because the parties did not contract with reference to the sub-contract, when it appears that the contract was made for the purpose of enabling the vendee to perform it. If the article is one which has a market-price, *Page 494 
although the sub-contract is contemplated, there is some reason for only imputing to the vendor the contemplation of a sub-contract at that price, and that he should not be held for extravagant or exceptional damages provided for in the sub-contract. But the mere circumstance that the vendor does not know the precise price specified in the contract will not exonerate him entirely. He cannot, in any case, know the precise market-price at the time for performance. Knowledge of the amount of damages is impracticable, and is not requisite. It is only requisite that the parties should have such a knowledge of special circumstances, affecting the question of damages, as that it may be fairly inferred that they contemplated a particular rule or standard for estimating them, and entered into the contract upon that basis. In Hadley v. Baxendale (9 Ex., 341), which is a leading case on the subject in the English courts, the court, after speaking of the general rule, says: "If the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and, thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of the contract under the special circumstances, so known and communicated."
This case has been frequently referred to, and the rule, as laid down, somewhat criticised; but the criticism is confined to the character of the notice, or communication of the special circumstances. Some of the judges, in commenting upon it, have held that a bare notice of special consequences which might result from a breach of the contract, unless under such circumstances as to imply that it formed the basis of the agreement, would not be sufficient. I concur with the views expressed in these cases; and I do not think the court, inHadley v. Baxendale, intended to lay down any different doctrine. (See authorities before cited.) Upon the point involved here, whether the defendant is exempted from the payment of any damages when there is no market-price, *Page 495 
and the price in the sub-contract is not known, there is no conflict of authority that I have been able to discover. In the first place, there is considerable reason for the position that where the vendor is distinctly informed that the purchase is made to enable the vendee to fulfill a sub-contract, and knows that there is no market-price for the article, he assumes the risk of being bound by the price named in the sub-contract, whatever that may be, but it is unnecessary to go to that extent. It is sufficient to hold, what appears to me to be clearly just, that he is bound by the price, unless it is shown that such price is extravagant, or of an unusual and exceptional character. The presumption is, that the price at which the property was sold was its fair value, and that is to be taken as the market-price for the purpose of adjusting the damages in the particular case. This presumption arises here. The profits were not unreasonable, certainly not extravagant. About fifteen per cent was allowed for profits, including the use of the patent, and no evidence was offered, or claim made, that the price was not the fair value of the article. We must assume that it was, and, hence, within the contemplation of the parties. The case of Borries v.Hutchinson (114 E.C.L., 443), is quite analogous to this. The article. caustic soda, was purchased to be sold to a foreign correspondent, which the defendant knew. There were several items of damage claimed. The profits on the sub-contract was conceded, and the money paid into court, but the court held, in passing judgment, that the plaintiff was entitled to recover such profits. ERLE, C.J., said: "Here the vendor had notice that the vendee was buying the caustic soda, an article not ordinarily procurable in the market, for the purpose of resale to a sub-vendee, on the continent. He made the contract, therefore, with the knowledge that the buyers were buying for the purpose of fulfilling a contract which they had made with a merchant abroad."
The case of Elbidger v. Armstrong (9 Q.B. [L.R.], 473), also illustrates the rule. That was a contract for the purchase of 666 sets of wheels and axles, which the plaintiff designed *Page 496 
to use in the manufacture of wagons; and which he had contracted to sell and deliver to a Russian company by a certain day, or forfeit two roubles a day. The defendant was informed of the contract, but not of the amount of penalties. Some delay occurred in the delivery in consequence of which the plaintiff had to pay £ 100 in penalties, and the action was brought to recover that sum. There was no market in which the goods could be obtained, and the same point was made there as here, that the plaintiff was only entitled to nominal damages; but the court says: "When, from the nature of the article, there is no market in which it can be obtained, this rule (the difference between the contract and market-value) is not applicable, but it would be very unjust if, in such cases, the damages must be nominal."
It is true that the court held that the plaintiff could not recover the penalties as a matter of right, mainly upon the ground that such a consequence was not, from the nature of the notice, contemplated by the parties; and yet the judgment, directing the amount of the penalties paid, was allowed to stand, as being a sum which the jury might reasonably find. Cary v.Thames Iron Works Co. (3 Q.B. [L.R.], 181), decided that when the article purchased was designed by the purchaser for a peculiar and exceptional purpose unknown to the seller, the latter was, nevertheless, liable for the damages which would have been incurred if used for the purpose which the seller supposed it would be used for.
The case of Horne v. Midland Railway Co. (8 C.P. [L.R.], 134), is not in conflict with the position of the plaintiff. In that case the article had a well known market-value. The sub-contract was at an unusual and extravagant price, of which the defendant was not informed. Besides, the defendant was a carrier, and it was seriously doubted by some of the judges whether the same rule would apply to a carrier as to a vendor. The question in all these cases is, what was the contract; and a carrier who is bound to take property offered at current rates, would not, perhaps, be brought within the *Page 497 
principle by a notice of ulterior consequences, unless such responsibility was sought to be imposed as a condition, and he have an opportunity to refuse the goods; or unless a special contract at increased rates was shown. The decision was placed upon the ground that the exceptional price was not within the contemplation of the parties. The authorities in this State support the doctrine of liability in a case like this. The cases of Griffin v. Collier and Messman v. N.Y. Shot Co. (supra), especially the latter, decide the same principle. The defendant in that case was informed of the price of the sub-contract, but the decision was not put upon that ground. This case presents all the elements which have been recognized for the application of the rule of liability. The plaintiff contracted with the defendant expressly to enable him to perform his contract with the railroad company, which the defendant knew. The goods could not have been obtained elsewhere in time; and in consequence of the failure of the defendant to perform his contract, the plaintiff lost the benefit of his sub-contract. It is not claimed that the price at which the completed rails were agreed to be sold was extravagant or above their value; and as there was no market-price for the article, the fact that the defendant was not informed of the precise price in the sub-contract, does not affect its liability. Nor does the fact that the defendant's contract does not embrace the entire article resold, relieve it from the consequences of non-performance. It was a material portion of the rail, without which it could not be made; and solely by reason of the failure of the defendant, the plaintiff failed to perform his contract, and thereby lost the amount for which he has recovered. We concur with the opinion of the referee and court below, in their views, holding the defendant liable.
The judgment must be affirmed.
All concur.
Judgment affirmed. *Page 498