SALVO vs. DUNCAN and another.

*March 16 — March 30, 1880.*

*(1) Plaintiff's contract to deliver logs defeated in part by defendant's fault: Measure of damages. (2) Evidence in such a case.*

1. On a contract by which plaintiff undertook to get out and deliver to defendants a certain quantity of logs, while defendants were to furnish him all necessary supplies for men and teams, where it appears that, in consequence of defendants' failure to perform on their part, plaintiff was able to deliver only part of the logs, plaintiff is entitled to recover not only the profits which he would have realized from the delivery of the logs which he was prevented from delivering, and the contract price of those actually delivered, but also the extra expense in delivering the latter caused by defendants' fault.

2. Plaintiff, as a witness in his own behalf, was permitted to state the actual cost of putting in the logs delivered, *and what it would have cost him had he been well supplied* by defendant. *Held*, no error.

3. Another witness for plaintiff, who had been employed by him in getting out the logs, and had been engaged in lumbering, "doing almost all kinds of work" connected therewith, for many years, was permitted to state his opinion as to whether plaintiff, with the force he had, could have continued, if well supplied, to put in a certain amount of logs per day. *Held*, that the evidence was of the nature of expert testimony, and admissible.

Salvo vs. Duncan and another.

APPEAL from the Circuit Court for *Columbia* County.

This action was commenced in July, 1877, in Taylor county, and removed to Columbia county for trial.

On the 15th of June, 1876, the defendants, *Duncan* and *Taylor*, entered into a contract with the plaintiff, by which plaintiff was to cut on certain lands, haul, drive and deliver to defendants at their mill at Westboro in this state, 2,000,-000 feet of pine logs before the 15th of September, 1876; and defendants were to pay plaintiff $2.50 per M. feet of said logs after the same should be scaled and delivered at said mill. Defendants further agreed to furnish plaintiff with feed, hay and provisions, as fast as the same should be needed, for men and teams. The complaint alleges that, after the making of said contract, plaintiff immediately hired a crew of men and procured teams sufficient to fulfill his part of the contract; that with such men and teams he went into the woods and commenced cutting and hauling the logs mentioned in the contract, and was ready and willing to fulfill his part thereof; that he applied to defendants for a supply of provisions for men and teams necessary for a vigorous and successful prosecution of the work, but defendants neglected to furnish the same in sufficient quantities to enable the men and teams to labor continuously at said work; that in consequence the men and teams were idle a large portion of the time, and, when plaintiff attempted to use his teams in said work, they were not able to perform as much labor as they would have done if sufficiently fed; that from the 11th to the 22d of July, 1876, defendants furnished no feed whatever for said teams, although requested so to do by plaintiff, and in consequence the teams were idle the whole of that time; that by reason of such failure and neglect of defendants, plaintiff was unable to deliver the whole amount of logs mentioned in the contract, within the time limited for that purpose; but that he did cut, haul and deliver to defendants at said mill, in pursuance of the contract, 937,367 feet of logs, which were accepted by the de-

fendants, and for which he was entitled to receive from them $2,723.27 according to the contract price; and that there is now due him thereon $672, which defendants have refused to pay on demand, which amount with interest he claims in this action.

For a second cause of action, after alleging at length his own readiness and attempts to perform the contract, and defendants' neglect to furnish provisions for the men or feed for the teams, and his consequent inability to deliver more than the 987,367 feet of logs before mentioned, the plaintiff further avers that the expense to him of delivering said logs was greater, by at least $300, than it would have been if defendants had furnished supplies so as to enable the men and teams to labor all the time; that plaintiff would have completed the contract within the time limited for that purpose, if defendants had provided the necessary supplies, at such a cost as would have left him a clear profit of $2,000 on the 2,000,000 feet; and that he had therefore sustained damages in the sum of $2,300 by reason of defendants' failure to perform the contract.

There was a third cause of action for $173, which need not be stated here.

The answer denied all averments of failure to perform the contract on defendants' part.

On the trial, defendants appear to have objected to all the evidence offered by plaintiff to show the increased cost of getting out and delivering the logs actually delivered, caused by defendants' default. There were also some other exceptions to the admission of testimony, which will appear from the opinion.

The court instructed the jury that, although full payment was not to be made for the logs until after their delivery at the mill, yet defendants were to furnish supplies and provisions as the work progressed and as the logs were scaled; that, as the amount needed for this purpose would be but a part of the contract price, and probably much the smaller part of it,

and as the logs were to be scaled on the bank of the river when daily cut, it seems to have been contemplated by the parties that the furnishing of supplies should commence when the work commenced, and should continue as the work progressed, in sufficient quantities to enable the work to be prosecuted with vigor and without unnecessary delays. The jury were further instructed that if they found plaintiff's claim true, and the defendants in substantial default, and the plaintiff guilty of no default, and that he might have fulfilled his contract but for the continued default of the defendants, then he was entitled to recover not only the contract price for the logs which he got out, but damages caused him by the delay in getting them out, and profits which, but for such default of the defendants, he might have made on the remainder of the logs called for by the contract. The other portions of the instructions given do not seem to be important here.

Plaintiff had a verdict for $828.82; a new trial was refused; and defendants appealed from a judgment on the verdict.

For the appellants there was a brief by *S. A. Corning*, their attorney, with *A. Scott Sloan* and *Jas. B. Taylor*, of counsel, and oral argument by *Mr. Sloan*.

The cause was submitted for the respondent on the brief of *Geo. W. Cate*.

COLE, J. There can be no doubt that the learned circuit court placed the right construction upon the contract offered in evidence, and that it was the plain duty of the defendants to furnish the plaintiff all necessary supplies for men and teams as fast as needed for the vigorous prosecution of the work. This is the clear meaning of the contract, and the parties seem to have so understood it. The questions litigated on the trial were, whether the defendants had substantially fulfilled the contract on their part, or whether, in consequence of their failure to furnish the necessary supplies, the plaintiff was prevented from performing the contract on his part.

On these issues the jury found in favor of the plaintiff, and it is undeniable that there is abundant testimony to sustain such a conclusion. If, then, the plaintiff was guilty of no default, but would have performed had the defendants kept the contract on their part, what was the proper measure of damages? The plaintiff really only delivered less than one-half of the logs which he undertook to put in. The court charged, in substance, that if he was prevented from fulfilling his contract by the default of the defendants, he was entitled to recover, *first*, the contract price for the logs actually cut and delivered on the contract; *second*, the extra expense of delivering those logs by reason of defendants' failure to furnish supplies beyond the contract price, if supplies had been furnished according to the contract; and *third*, the difference between the contract price and the actual cost to him of putting in the logs not delivered. When considered with reference to the facts of this case, we can see no valid objection to this rule of damages. It will, of course, be conceded, if the plaintiff was prevented through the fault of the defendants from fully performing the contract, that he was entitled to recover the contract price for the logs which he did actually deliver. On the same hypothesis, it seems to us, it cannot be denied that he was also entitled to recover the profits which he would have realized by delivering all of the logs according to the contract. In other words, he might recover the difference between the contract price and what it would have cost him to put in the remainder of the logs. *Wood v. Schettler*, 23 Wis., 501.

But the learned counsel for the defendants insists that the other item of damages, namely, the extra expense which he was put to on the logs delivered in consequence of the failure of the defendants to furnish supplies, cannot be recovered, though the increased expense was caused by the default of the defendants. We cannot agree with counsel in this view of the law. It seems to us that the increased ex-

pense or loss which the plaintiff sustained by reason of the failure of the defendants to furnish the necessary and proper supplies, constitutes a legitimate ground of damage. The plaintiff, with his men and teams, went into the woods, several miles distant from the market, where no provisions for either animals or men could be obtained, relying upon getting his supplies from the defendants; but, in consequence of their failure to furnish them, both men and teams had to lie idle considerable time, and when they did work labored at a disadvantage. Now, why should not the defendants be held responsible for this loss which the plaintiff sustained because his men and teams had nothing to eat and therefore could not work? This loss was the direct and necessary result of the breach of contract upon their part. Why should they not make the plaintiff whole for it? When parties make a contract, which one of them breaks or neglects to keep, the law says that the delinquent party must recompense the other for all the natural and direct damage which results from such breach. Now the defendants must have known all about the loss and inconvenience which they would subject the plaintiff to by failing to furnish supplies as they agreed to do. We see no hardship in requiring them to make this loss good, and we believe sound legal principles impose that liability upon them. The plaintiff's ability to perform was dependent upon obtaining supplies; and, if he was put to extra expense in getting out the logs which he did deliver, because the defendants kept back such supplies, why should they not make good this loss? It seems to us they were bound in law and justice to do so.

It is said that the plaintiff was not entitled to recover anything, because the evidence shows that with the force he had employed it was impossible for him to have gotten out the 2,000,000 feet within the time, even if he had been abundantly supplied. But the obvious answer to this objection is, that there was nothing to prevent him from employing more men

Salvo vs. Duncan and another.

and teams, if necessary, to fulfill his contract, and presumably he would have done so. Manifestly it would have been unwise for him to have increased his force so long as he was unable to obtain supplies for the men and teams he had.

One or two exceptions to the admission of certain testimony remain to be noticed. The plaintiff was asked, while testifying in his own behalf, as to the cost of putting in the logs he did deliver, and what it would have cost him had he been well supplied. We can see no objection to such questions, if the extra expense was a proper subject of damages, as we have held it to be. In no other way was it possible to ascertain his damage on this head. Again, the witness Oliver was asked whether he thought the men and teams employed by the plaintiff would have been able to put in 25,000 or 30,000 feet per day all the time, if they had been well supplied, as they ought to have been. It is said that this was substituting the opinion of the witness for facts, or allowing him to swear to conclusions which the jury would draw. The witness was employed by plaintiff in getting out the logs, and said that he had been engaged in lumbering fourteen or fifteen years, doing "almost all kinds of work." The testimony was in the nature of expert testimony, and we think he might state whether the plaintiff, with the force he had, could continue to put in the quantity of logs which he says they did put in some days. Unless the jury were experienced in that kind of business, they would want some light on the subject, and to guide their judgment as to what the plaintiff could do. At all events, the evidence was not very material, because, as we have said, the plaintiff might have increased his force if he found that he could not perform his contract with the force he had. We do not think there was any error committed on the trial which would warrant a reversal of the judgment.

*By the Court.* — The judgment of the circuit court is affirmed.