## EDWARD P. ALLIS v. SETH McLEAN ET AL.

*Damages for breach of contract to furnish machinery.*

Damages for breach of contract cannot be measured by the loss of expected profits where the latter are uncertain and speculative and depend on so many contingencies that their loss cannot be traced to the breach with reasonable certainty. But profits are the best possible measure of damages where their loss is indisputable and the amount can be estimated with almost absolute certainty; as in the case of advances on the contract price of wheat or other articles which have ready sale at a current market price ; or where the breach of contract results in the failure of another contract which would have produced fixed and definite profits.

One who seeks to recover for a breach of contract, the profits of which would be wholly uncertain, must point out elements of damage more certain and more directly traceable to the injury than prospective profits can be.

The owner of a saw-mill contracted for "wrought feed friction works" to be placed in the mill early in March, and notified the other party that for every day's delay in putting them in he would suffer $150 damages. The works were not put in until July, though frequently promised, but the mill was furnished with other works which enabled it to be operated, except for 16½ working days during which it lay idle. *Held* that the loss of profits from the inability to manufacture lumber for that time was too uncertain to provide a measure of damages for the breach of contract. Nor could the rental value be made a measure of damages, especially if it did not appear that the owner would have leased or that anybody would have rented the mill.

Case made from Bay.    Submitted April 20.    Decided June 14.

ASSUMPSIT. Defendants bring error. Affirmed.

*Holmes, Collins & Stoddard* for appellants. Damages for breach of a contract to furnish machinery needed to run a mill may be measured by the rental value of the mill, or the profits which defendants would have realized in operating the mill for that period. *Clark v. Moore* 3 Mich. 62; *Burrell v. N. Y. & Sag. Salt Co.* 14 Mich. 35; *Haskell v. Hunter* 23 Mich. (annotated ed.) 305, and cases cited in note; *Hopkins v. Sanford* 38 Mich. 611; *Freeman v. Clute* 3 Barb. (N. Y.) 424; *Griffin v. Colver* 16 N. Y. 489; *Starbird v. Barrons* 38 N. Y. 231; *Ruff v. Rinaldo* 55 N. Y. 664; *Booth v. Spuyten Duyvil Rolling Mill Co.* 60 N. Y. 487; *Hewter v. Knox* 63 N. Y. 561; *Abbott v. Gatch* 13 Md. 314; *Paine v. Sherwood* 21 Minn. 225; *Brown v. Foster* 51 Penn. St. 165; *Benton v. Fay* 64 Ill. 422; *Wolcott v. Mount* 36 N. J. 262: 13 Am. R. 438; *Hadley v. Baxendale* 9 Ex. 341; *Cory v. Thames Iron Works Co.* L. R. 3 Q. B. 181; *Jaques v. Millar* 6 Ch. Div. 153: 22 Eng. 728.

*A. McDonell* for appellee.

COOLEY, J. The question in this case is one of damages for the non-performance of a contract within the agreed time. The facts are found by the circuit judge.

From the finding it appears that in January, 1880, the defendants were proprietors of a saw-mill in general good order and condition at Bay City, and on the tenth day of that month made an agreement with the plaintiff, a manufacturer of mill machinery, whose place of business was at Milwaukee, in the state of Wisconsin, for the manufacture by him for use in their mill of a piece of machinery known as a " wrought feed friction works," to be shipped on board cars at Milwaukee on or before March 1, 1880, so that it would reach Bay City within two or three days of that date. The contract on behalf of plaintiff was made through one Hinckley as his agent, who was notified by defendants at the time of the following facts:

(1) That the saw-mill of defendants had therein at that time a feed works which worked fairly well, but which

defendants thought of changing, and which were not as good as the feed works contracted to be furnished by plaintiff as aforesaid, were by both parties believed to be. (2) That in order to use the feed works of plaintiff's manufacture, the defendants would be compelled to take out the feed works then in their mill, and adapt their mill and machinery for the use of the feed works of plaintiff's manufacture. (3) That without a feed works the mill of defendants could not be operated, and could not saw and manufacture lumber; and that to make the change necessary to put in said new "feed works" it would take considerable time and expense, and when said mill and machinery were adapted to the feed works of plaintiff's manufacture, the same could not be changed so as to use another kind without great expense and loss of time. (4) That it was necessary that said feed works should be in Bay City as soon as it could be by being shipped from Milwaukee on or before March 1st, 1880, which would be in two or three days from that time, to enable defendants to place the same in their mill and commence the manufacture of lumber at the commencement of the sawing season; and that unless plaintiff would agree to have the same shipped at said time so as to get to Bay City as aforesaid, the defendants would not purchase the same; and that the defendants stated to said Hinckley that for every day's delay of the feed works the mill in consequence would be delayed, and that for every day's delay of the mill the defendants would be damaged one hundred and fifty dollars.

Shortly prior to March 1, 1880, defendants were informed by plaintiff that the machinery would be shipped as agreed, and during the month of March they were repeatedly notified that the feed works would be shipped from Milwaukee in a few days from each of such notices, but it was not finally completed and shipped until in July following. On April 5, 1880, plaintiff supplied the defendant with feed works like that contracted for except that the main part or friction of the same was cast instead of wrought iron, and with this the defendants were enabled to start up and use

their mill until the works contracted for were received in July.

For want of the feed works the mill of defendants, without any fault, negligence or waiver on their part, lay idle through March and until the fifth of April, though they had in their mill-booms stock for manufacture, and they actually lost the use of the mill for at least sixteen and one half working days. During the said sixteen and a half days, when said defendants were deprived of the use of their mill in consequence of the failure of plaintiff to furnish said feed works in accordance with his agreement, the defendants could and would, if the same had been furnished, have used and operated their mill, and could and would, in the usual way of operating the same, have manufactured therein at least seventy-five thousand feet of lumber per day, the sawing of which would have yielded them a profit, over and above the ordinary expenses of running said mill, of ninety-three dollars and seventy-five cents per day, and which the defendants have lost by reason of such failure on the part of said plaintiff, and the fair rental value of the mill would have been seventy-five dollars per day during the time last above mentioned.

On this finding, there being no other showing of damages on the part of defendants, the circuit judge decided that the plaintiff was entitled to recover the contract price of the feed works without reduction, and gave judgment accordingly. The defendants bring the case to this court.

We had occasion in *McKinnon v. McEwan* ante p. 106, decided at the last term, to pass upon a question much like the one which arises here. In that case as in this a mill-owner had contracted for machinery to be furnished by a specified day, and he sought to recover profits lost by reason of his mill lying idle, as damages for the failure to perform the contract in time. It seems reasonable that where profits are thus lost the defaulting party should make them good, for the machinery is purchased with a view to the profits, and the contract would not be entered into if the profits were not expected and counted upon. But the difficulty in

measuring damages by profits is that they are commonly uncertain and speculative, and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of contract. When that is the case they are said to be too remote; and the damages must be estimated on a consideration of such elements of injury as are more directly and certainly the result of the failure in performance. But in some cases profits are the best possible measure of damage, for the very reason that the loss is indisputable, and the amount can be estimated with almost absolute certainty. The case of a contract for the delivery of grain or any other article which at all times finds a ready sale at a current market price is an instance: if the contract is not performed, the purchaser may recover the advance beyond the purchase price; and this, though not recovered under the name of profits, is really nothing else. It often happens also that one contract, the performance of which will result in certain and definite profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits under the other is a necessary and immediate consequence. There is no difficulty in saying in some such cases that profits lost are the proper measure of damages. *Loud v. Campbell* 26 Mich. 229; *Booth v. Rolling Mill Co.* 60 N. Y. 487; *Salvo v. Duncan* 49 Wis. 151; *Hitchcock v. Galveston* 3 Wood C. C. 287; *Fingal v. Latour* 81* Penn. St. 448; *James v. Adams* 8 W. Va. 568; *Waters v. Towers* 8 Exch. 401. But the profits of running a saw-mill are proverbially uncertain, indefinite and contingent. They depend on many circumstances, among which are capital, skill, supply of logs, supply and steadiness of labor; and one man may fail while another prospers, and the same man may fail at one time and prosper at another, though the prospective outlook seems equally favorable at both times. Estimates of profits seldom take all contingencies into the account, and are therefore seldom realized; and if damages for breach of contract were to be determined on estimates of probable profits, no man could know in advance the extent of his

responsibility. It is therefore very properly held in cases like the present that the party complaining of a breach of contract must point out elements of damage more certain and more directly traceable to the injury than prospective profits can be. *Fleming v. Beck* 48 Penn. St. 309; *Pittsburg Coal Co. v. Foster* 59 Penn. St. 365; *Strawn v. Cogswell* 28 Ill. 457; *Frazer v. Smith* 60 Ill. 145; *Howe Machine Co. v. Bryson* 44 Iowa 159.

But this case is thought to be different because here the fair rental value of the mill is proved, and it is said that this was certainly lost. But we do not know that that was the case. If the mill had been in condition to rent at that time, there may have been no customer for it on terms the owner would have consented to grant; and if customers were abundant and satisfactory, it cannot be assumed that the whole rental value is lost when a mill stands idle. The wear and tear of machinery and buildings in use is something, and it is not improbable that the landlord would take this among other things into account in determining what should be the rent. But in this case it does not appear that rent was lost or could have been lost, for it is not shown that defendants desired to rent or would have consented to do so if a customer had offered. In fact the contrary is clearly inferable.

The judgment must be affirmed with costs.

CAMPBELL and MARSTON, JJ. concurred.