## ALEXANDER, ASSIGNEE, v. BISHOP.

1. **Lessor and Lessee**: MEASURE OF DAMAGES FOR WITHHOLDING LEASED PREMISES. A. was occupying as a store room a building owned by B., under a lease which expired in October, 1882. July 22, 1880, the parties agreed in writing that B. should move the building into the adjoining street, there to be occupied by A. while B. should erect a better building on the site of the old one, which new building he agreed to have completed and turned over to A. by October 15, 1880. B. did not get the new building completed until June, 1881, and then refused to allow A. to take possession of it; but A. by legal measures, acquired possession of it June 4, 1881. A. was to hold the new building instead of the old one under the terms of the old lease, until the expiration thereof. *Held* that the measure of A.'s damages for the breach of the contract was the market rental value of the new building, less the rent agreed to be paid, from October 15, 1880 to June 4, 1881; and the action of the court below in allowing him the difference in the value of the use of the two places from October 15, 1880, to June 4, 1881, was *held* erroneous, as involving an inquiry into the extent of A.'s business, the amount of goods he would probably have sold in the new building, and the profits he would have made thereon—an inquiry too speculative and remote upon which to base a claim for damages. BECK, J., *dissenting.*

*Appeal from Montgomery Circuit Court.*

FRIDAY, OCTOBER 20.

ACTION at law to recover damages for the breach by defendant of the conditions of a written agreement between the par-

ties.   The cause was tried without a jury and judgment was rendered for the plaintiff upon findings of fact and law by the court.   Defendant appeals.   The facts appear in the opinion.

*Miller & Bartholomew,* and *McPherson & Murphy,* for appellant.

*N. S. Strawn* and *C. E. Richards,* for appellee.

ROTHROCK, J.—We do not deem it necessary to set out at length the written contract.   It appears from the record that the defendant owned a building which he had leased to the plaintiff and in which plaintiff was keeping a stock of merchandise as a retail dealer, and the lease was for a term which would have expired in October, 1882.   The defendant desired to erect another and better house upon the ground where the leased building stood.   Thereupon the parties, on the 22d day of July, 1880, entered into the written contract, the breach of which is complained of, by which it was agreed, in substance, that the defendant should remove the old building into an adjoining street to make room for the erection of the new building, and that plaintiff should continue his business in the old building until the new one should be completed which the defendant bound himself to do, and to have the same ready for occupancy by plaintiff, on or before the 15th day of October, 1880.   There are other stipulations in the written contract not necessary to be mentioned here; they are sufficiently referred to in the findings of fact hereinafter set out.

The defendant removed the old store room into the street and commenced the erection of the new building, which he failed to complete by the time named in the contract, and the same was not completed and ready for use until June, 1881, when the defendant refused to allow the plaintiff to take possession thereof, and the plaintiff resorted to legal proceedings, and thereby acquired the possession on the 4th of June, 1881.

At the request of the defendant, the court made special findings of fact and conclusions of law, which were reduced to

writing and signed by the presiding judge. They are as follows:

"1. That at the making of the contract sued on, the parties, Brink and Bishop, stood as lessor and lessee under the lease in evidence.

"2. That Brink had been in business on the leased premises for about four years preceding, carrying on business as a merchant with a stock of dry goods and groceries, averaging from six to seven thousand dollars, and he had a right to continue under the said lease until October 29, 1882.

"3. That Bishop was bound by said lease to keep said premises in at least ordinary good repair.

"4. That by the contract sued on Brink granted Bishop the privilege of removing the old building with the goods therein into the street, and to erect a new building on the site, and agreed to occupy the old one in the street until October 15, next following, and thereafter to occupy the new one upon the terms of the lease.

"5. That in consideration thereof Bishop agreed to indemnify Brink against all loss, during or by reason of such removal, to keep the approaches of the old building in good order, to complete the new room and basement, as per specifications in the contract, and to give Brink the use thereof in lieu of the old room on or before October 15, 1880.

"7. That in pursuance of said agreement the old building was moved into the street; that no injury resulted to the goods during the act of removing the same, but in consequence thereof and of the unavoidable settling of the building upon its temporary foundation, the roof was opened so as to increase its leaky condition.

"8. That in consequence of the bad condition of the roof, Brink's goods were damaged by rain between the removal of the building and October 15, to the amount of $59.55.

"9. That Bishop did keep the approaches to the old building in as good order as was contemplated by the parties, in view of the construction of the new building.

"10. That Bishop failed to have the new building ready for use prior to the second day of June, 1881, and that he then and thereafter refused to allow Brink the possession thereof.

"11. That Bishop failed to construct a good substantial cellar under said room up to the bringing of this suit, in that the cellar was wet and no drainage was provided thereto, and in that no suitable entrance was made to said cellar.

"12. That by reason of Bishop's refusal to let Brink have the new room when completed he was compelled to resort to legal proceedings to secure possession of the same, and did thereby obtain possession on June 4, 1881.

"That in obtaining possession he incurred a liability for an attorney's fee worth $50, expended in procuring the necessary writ four dollars, and in moving Bishop's goods from the room five dollars.

"13. That the old building situated as it was, on the street, had no rental value as a place for the dry goods and grocery business during the winter months, and not over ten dollars per month at other seasons.

"14. That the rental value of the new store room and cellar completed as per contract was fifty dollars per month.

"15. That the rental value of cellar completed as per contract was ten dollars per month.

"16. That the contract sued on was made with respect to the business with which Brink had been and was then engaged and in contemplation of its continuance at that place until the expiration of the lease.

"17. That for the period from October 15, 1880, to June 4, 1881, the new building completed as per contract was worth one thousand dollars more than the old in a condition in which it was as a place of business to one carrying from six to seven thousand dollars in groceries and dry goods, who had been four years in that business on that corner, and who contemplated continuing therein until October 28, 1882.

"18. That Brink paid rent according to the terms of the lease up to the commencement of this suit.

"And I find as conclusions of law:

"1. That all consequences directly resulting from a breach of the contract, and which in view of the relations of the parties and the subject-matter of the contract were contemplated by them as forming a part of the inducements and considerations in the contract, are proper to be considered in estimating damages resulting from the breaches.

"2. That as the contract was not merely one of lease, but was made in view of and with reference to the business of plaintiff, the mere difference in rental value is not the measure of damage.

"3. That the measure of plaintiff's damage is the loss actually sustained to his goods by reason of the defective condition of the roof up to October 15, 1880; the difference in the value of the use of the two places from October 15, 1880, to June 4, 1881, to a person having the right that Brink had under the lease and contract, as a place in which to carry on the business with reference to which the contract was made; the amount actually and necessarily expended in procuring possession, and the value and use of the cellar from the time he obtained possession on until the commencement of this suit.

"Upon the foregoing findings judgment will be renderd in favor of the plaintiff.

For damages to goods to October 15, 1880 . . . . . . .    $59.55
For difference in the value of the use of the two
   places from October 15, 1880 to June 4, 1881 . . . .   1,000.00
For expenses in obtaining possession . . . . . . . . . . . .      59.00
For the use of the cellar from June 4, to December
   11, 1881 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      75.00
           Total . . . . . . . . . . . . . . . . . . . . . . . . . . .  $1,193.75

· J. GIVEN, *Judge.*"

And on the same day (February 7, 1881) defendant filed his motion for judgment as follows:

Defendant moves for judgment only against him on the special findings of fact found by the court; viz, the aggregate or sum total of the following items; to-wit,

1. Rental value of new store room for seven months and nineteen days............................ $383.33
2. Rental value of cellar from June 4, 1881, to commencement of this suit..................... 75.00
3. Damage to goods......................... 59.55
4. Expenses in obtaining possession............. 59.00

Total................................$576.88

Less the rental value of old store room at $10 a month, excepting winter months, being four and two-thirds months.

Leaving balance of $530.22, for which said sum of $530.22 defendant moves judgment be rendered against him, and for no other or greater sum.

And for reasons.

1. "By the adoption of the correct rule for the measure of damages no greater sum should be allowed.

2. "That to allow a greater sum for plaintiff is to allow damages that are too remote, and speculative and contingent."

The court overruled the motion and entered judgment for the full amount as found in the special findings, to which the defendant excepted.

Some question is made by the plaintiff as to the right of the defendant to question the findings of fact because they are in response to his own request, and because of insufficient assignments of error. We do not regard these objections as well taken, and we need not give them further attention. A statement of them would demonstrate that they are without merit.

It will be observed that the defendant accepts the findings of fact as correct. By the 14th finding the rental value of the new store room and cellar completed as per contract was fifty dollars a month. The defendant contends this amount is the true measure of the plaintiff's damages. But the court found that the new building was worth one thousand dollars more than the old for the period from Oct. 15, 1880, to June 4, 1881, "in the condition in which it was as a place of business to one

1. LESSOR and lessee; measure of damages; for withholding leased premises.

carrying from six to seven thousand dollars in groceries and dry goods, who had been four years in that business on that corner, and who contemplated continuing therein until October 28, 1882." The evidence upon which this finding was made is not in the record. But no such finding could have been made without evidence showing the extent of the plaintiff's business, the amount of goods he would probably have sold in the new building, and the profits he would have made thereon. No other evidence would have supported the finding. It will be readily seen that such evidence is purely speculative and too remote to base thereon a claim for damages.

Where a lessee is wrongfully kept out of leased premises, the measure of damages ordinarily is the market rental value less the rent agreed to be paid, or, as is stated in *Adair v. Bogle*, 20 Iowa, 238, "the difference between the rent reserved and the value of the premises for the term." In some adjudged cases the expression "value of the use" of the premises is employed instead of "rental value," but an attempt to make the one expression mean more than the other is a mere play upon words. They mean substantially the same thing. We see nothing in this case to take it out of the ordinary rule. Counsel for appellee cite the case of *Taft v. Tiede*, 55 Iowa, 370, as supporting the doctrine that plaintiff in this case is entitled to profits as damages. An examination of that case will show that the profits allowed did not depend upon any contingencies such as fluctuations of the market, failure of crops, stringency in the money market, or any other uncertain event. The price of the commodity to be manufactured was in that case fixed by the contract. That profits are not ordinarily recoverable in an action for a breach of contract, see *Howe Machine Co. v. Bryson*, 44 Iowa, 159.

It was no doubt competent for the parties to have contracted that for failure to finish the new building within the time stipulated the defendant should be liable for more than the rental value. But where a contract contains no such stipulation the profits of a business are so uncertain and specu-

lative and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of the contract. There is, it is true, a class of cases where the loss of profits are allowable as a measure of damages. In *Allis v. McLean*, Sup. Ct. Mich., N. W. Rep. Vol. 12, 640, it is said: "It often happens also that one contract, the performance of which will result in certain and definite profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits under the other is a necessary and immediate consequence. There is no difficulty in saying in some such cases that profits lost are the proper measure of damages." Citing *Hand v. Campbell*, 26 Mich., 429, *Booth v. Rolling Mill Co.*, 60 N. Y., 487; *Salvo v. Duncan*, 49 Wis., 151, and other cases.

But the profits of a mercantile business are notoriously uncertain, speculative and contingent. They depend upon capital, skill, the fluctuation of the markets, the character of the competition of others in the same business, and many other contingencies, and, if allowed as a proper element of damages, no man could know in advance the extent to which he might be liable in a contract like the one in the case at bar. The dividing line between direct and remote damages can never be clearly defined, because each case must depend upon its own facts, but we think no well considered case can be found where a court has advanced so far into the field of speculation as is required by the rule adopted by the Circuit Court in this case.

The motion for judgment against defendant in the sum of $530.22 should have been sustained.

REVERSED.

BECK, J., *dissenting.*—It will be observed, by attention to the statement of the facts made in the foregoing opinion, that the defendant was bound by the contract between the parties to furnish plaintiff the new house on the 15th of October, 1880. The plaintiff was to pay therefor a stipulated

rent. By the defendant's default the plaintiff was deprived of the use of the new house. The law requires that he shall be compensated for the direct and certain loss he sustained by the default of defendant. This loss, it is plain, is the value of the use of the new house to plaintiff, less the value of the use of the old one. The rent agreed to be paid for the respective buildings, or their rental value, does not determine the value of the use of each to plaintiff. The use of a house rented at $50 per month may be of the value of $150 per month to the tenant. If the tenant is deprived of its occupancy in any manner, he would not be fully compensated for his loss unless he be paid the full value of its use to him. To allow him the rental value of the house if it be less than the value of its use, would not render adequate compensation. So, if a tenant is bound to pay $50 per month, the rental value of the premises, and having paid no rent, is deprived of the house, he could not recover, if it be shown that the value of the use of the premises to him is less than the rental value he agreed to pay. The law in these cases allows to the tenant the value to him of the use of the premises of which he is deprived.

In the case before us, the value of the use of the new house to plaintiff in the prosecution of his business, the extent and character of that business, and the advantages which he would derive from its occupancy in connection with his established trade, were all in the contemplation of the parties to the contract, and were inducements thereto. The defendant undertook to furnish the house for the purposes of plaintiff's peculiar business and trade, and he was thus apprised of the losses which plaintiff would suffer by his default; he became bound to reimburse plaintiff therefor.

This court has held in *Adair v. Bogle*, 20 Iowa, 238, that a lessee may recover the value of the use of leased premises, less rent due, in an action against the lessor, who withholds the leased premises from him. The facts of the case before us bring it within this rule. The defendant, by his failure to

perform his contract, kept plaintiff out of possession of the leased premises. He is liable, in this action, for the value of the use of the new house to plaintiff during the time he withheld its possession in violation of the terms of the contract.

Our conclusions above expressed are supported by the following authorities: *Mihills Manufacturing Co. v. Day Bros.*, 50, Iowa, 250; *Winne v. Kelley*, 34 Iowa, 339; *Trull v. Granger*, 8 N. Y., 115; *Hixter v. Knox*, 63 N. Y., 561; *Myers v. Burns*, 35 N. Y., 269; *Griffin v. Colon*, 16 N. Y., 489; *Masterton & Smith v. Mayor of Brooklyn*, 7 Hill 61; *Leyfert v. Bean*, 83 Pa. St., 450; *Hinckley v. Beckwith*, 13 Wis., 31; *Hadley et al. v. Baxandale et al.*, 9 Exch., 341. See also cases cited in notes to Sedgwick on the Measure of Damages, 140.

It is my opinion that the judgment of the Circuit Court is correct and ought to be affirmed.