# Moulthrop & Stevens v. Hyett & Smith.

## Action on Promissory Note.

1. *Recoupment for breach of warranty; when damages too remote.*—In an action on a promissory note given for the purchase price of a brick-drying machine, the purchaser can not, on the ground of the breach of warranty as to the capacity of the machine, recoup as damages the prospective profits he claims he would have made if the capacity of the machine had been as warranted; such damages being too remote, and not within the contemplation of the parties.

APPEAL from the City Court of Decatur.
Tried before the Hon. W. H. SIMPSON.
The facts of the case are sufficiently stated in the opinion.

O. KYLE, for appellant.—The evidence of damage in this case was full, complete and certain, and the defendants' plea of recoupment should have been sustained. *Bell v. Reynolds*, 78 Ala. 511 ; *Mudge v. Treat*, 57 Ala. 1. The case of *Reed Lumber Co. v. Lewis*, 94 Ala. 627, is not applicable to the facts of this case.

WERT & SPEAKE, *contra*.

McCLELLAN, J.—This is an action by Hyett & Smith on a promissory note for five hundred dollars executed to them by Moulthrop & Stevens. The consideration of the note was a brick-drying machine called a "Smith Hot Blast Heater, No. 45." The defendants

[Moulthrop & Stevens v. Hyett & Smith.]

pleaded in recoupment that Hyett & Smith, through their agent who made the sale, warranted that the machine would dry 25,000 bricks in twenty-four hours, that it in fact would not dry more than from 7,500 to 10,000 bricks in that time, and that in consequence they were damaged in the sum of six hundred dollars, which they offered to recoup against plaintiffs' demand, praying judgment over in their favor for the excess.

The trial was had without jury, the judge at the request of the parties making a special finding of facts. There were several rulings made on the pleadings and the competency of testimony to which exceptions were reserved by the defendant. None of these rulings, however, had any bearing upon the point on which the case was decided against the defendants, and whether they were erroneous or not is wholly immaterial if the judge of the city court correctly adjudged that particular point, since if erroneous no injury resulted to the defendants.

The decision of the court was "that defendants' plea of recoupment in consequence of the alleged failure of consideration is not sustained by that character of evidence from which the law can fix defendants' damages." The evidence in this connection was to the effect that for six months after the machine was put in operation there was an active demand for brick, that if the heater had had a drying capacity of 25,000 per day as represented, the defendants could have made from 30,000 to 40,000 brick a week, but that with its actual capacity they "made on an average from 15,000 to 18,000 brick a week, and that their profit on the brick manufactured by them during that period was $3.50 per thousand. We concur with the trial court that this evidence did not entitle the defendants to damages by way of recoupment, or otherwise, against the plaintiffs. The damages which it tends to show are entirely too speculative, conjectural, uncertain and far beyond the contemplation of the parties to be recoverable. The profits which the purchaser of a chattel expects to make by the use of it are not recoverable in an action for damages against the seller for its non-delivery according to the terms of the sale—and the principle is the same where the chattel is delivered but is incapable of the uses—or less capable—for which it was intended—because the loss of them is neither the necessary nor the natural consequence of the seller's failure to

deliver the thing sold, and could not therefore have been
within the contemplation of the parties, and for the further
reason that mere profits existing only in expectancy—
profits which the party believes he would have made but
for the untoward circumstances complained of—"are in-
capable of that clear and satisfactory proof which the law
requires to constitute recoverable damages."—*Reed Lum-
ber Co. v. Lewis*, 94 Ala. 626, and authorities there
cited ;/5 Amer. & Eng. Encyc. of Law, pp. 32, 34 ; *Penny-
packer v. Jones*, 106 Pa. St. 237 ; *McKinnon v. McEwan*,
48 Mich. 106 ; s. c. 42 Am. Rep. 458. This last case is
strikingly analogous to the one at bar. In the note of
it found in the Encyclopedia, and which is fully sup-
ported by the opinion itself, it is said : "Loss of profits
cannot be made the measure of damages for breach of
contract where the profits are conjectural, speculative,
dependent on chances, or have no reference to the na-
ture of the contract and the breach ; nor where the dam-
ages largely exceed the contract price, unless such a re-
sult is in contemplation of the parties." And in *Allis
v. McLean*, 48 Mich. 428, the owner of a saw mill con-
tracted for "wrought feed friction works" to be placed
in the mill early in March, and notified the other party
that for every day's delay in putting them in he would
suffer $150 damages. The works were not put in until
July, though frequently promised, but the mill was fur-
nished with other works which enabled it to be operated
except for sixteen and one-half days during which it lay
idle. Yet even upon these facts it was held that the
lost profits from the inability to manufacture lumber for
that time were too uncertain to provide a measure of
damages for the breach of the contract. The court said :
"We had occasion in *McKinnon v. Ewan*, 48 Mich. 106,
decided at the last term, to pass upon a question much
like the one which arises here. In that case, as in this,
a mill-owner had contracted for machinery to be fur-
nished by a specified day, and he sought to recover pro-
fits lost by reason of his mill lying idle, as damages for
the failure to perform the contract in time. It seems
reasonable that where profits are thus lost the default-
ing party should make them good, for the machinery is
purchased with a view to the profits, and the contract
would not be entered into if the profits were not expected
and counted upon. But the difficulty in measuring dam-

ages by profits is that they are commonly uncertain and speculative, and depend upon so many contingencies that their loss cannot be traced with reasonable certainty to the breach of contract. When that is the case they are said to be too remote; and the damages must be estimated on a consideration of such elements of injury as are more directly and certainly the result of the failure in performance. But in some cases profits are the best possible measures of damages, for the very reason that the loss is indisputable and the amount can be estimated with almost absolute certainty. The case of a contract for the delivery of grain or any other article which at all times finds a ready sale at a current market price is an instance; if the contract is not performed, the purchaser may recover the advance beyond the purchase-price; and this, though not recovered under the name of profits is really nothing else. It often happens also that one contract, the performance of which will result in certain and definite profits, will be dependent upon the performance of another; and if the second contract is broken, the loss of definite and fixed profits under the other is a necessary and immediate consequence. There is no difficulty in saying in some such cases that profits lost are the proper measure of damages.—*Loud v. Campbell*, 26 Mich. 239; *Booth v. Rolling Mill Co.*, 60 N. Y. 487; *Salvo v. Duncan*, 49 Wis. 151; *Hitchcock v. Galveston*, 3 Wood C. C. 287; *Fiegel v. Latour*, 81 Pa. St. 448; *James v. Adams*, 8 W. Va. 568; *Waters v. Towers*, 8 Exch. 401. But the profits of running a saw-mill are proverbially uncertain, indefinite and contingent. They depend on many circumstances, among which are capital, skill, supply of logs, supply and steadiness of labor; and one man may fail while another prospers, and the same man may fail at one time and prosper at another, though the prospective outlook seems equally favorable at both times. Estimates of profits seldom take all contingencies into the account, and are therefore seldom realized; and if damages for breach of contract were to be determined on estimates of probable profits, no man could know in advance the extent of his responsibility. It is, therefore, very properly held in cases like the present that the party complaining of a breach of contract must point out elements of damage more certain and more directly

traceable to the injury than prospective profits can be. *Fleming v. Beck*, 48 Pa. St. 309; *Pittsburg Coal Co. v. Foster*, 59 Id. 365; *Strawn v. Cogswell*, 28 Ill. 457; *Frazer v. Smith*, 60 Id. 145; *Howe Machine Co. v. Bryson*, 44 Iowa, 159; s. c., 24 Am. Rep. 735."

The entire soundness of these views is aptly illustrated in the case at bar. Here the machine was operated for six months, and its operation appears to have been stopped because of circumstances wholly disconnected with the machine itself and wholly fortuitous. But for these untoward occurrences, namely, the outbreak of an epidemic of yellow fever in Decatur and New Decatur and the collapse, from that among other causes, of the building boom that had existed there during the six months of operation, it is fair to assume that the machine would have continued a much longer time in operation, possibly until the present time. The nearest approach that the defendant's evidence makes to the amount of lost profits by reason of the machine's not coming up to representations during the six months they used it, is from $42 to $87.50 per week or somewhere from $1,092 to $2,275 for the six months. The evidence no more tends to show the one amount than it tends to show the other; and there is confessedly no certainty that either is the true amount, or even, we feel justified in saying, that any ascertainable amount greater than the less and less than the greater of the sums named would truly represent the lost profits of the defendant. But even the smaller sum far exceeds the price of the machine. Can it be possible that the plaintiffs should in six months be called on to pay as damages for failure in respect of the machine's efficiency a sum somewhere from one and a half to three times the price of the thing sold? And had the fever not come, and the boom continued from 1887 to the present time, the damages, according to defendants, would have been somewhere from $15,000 to $32,000 for the failure of a $750 machine to accomplish fully what was claimed for it. And even if the time be computed to suit brought, the damages would be somewhere from $2,200 to $4,600. And this, too, when it seems the defendants had at all times the right, which the plaintiffs were at all times ready to effectuate, to return the machine to the seller. It is absurd to say that such damages were in the contempla-

32

[Commercial Fire Insurance Co. v. Morris & Co.]

tion of the parties, or that they were in any sense the necessary or natural consequence of the partial incapacity of the machine. And the uncertainty of the amount of such profits on the face of defendants' evidence, they placing it indefinitely from $1,000 to $2,200, is accentuated and emphasized by the entirely fortuitous causes—the occurrence of fever and the collapse of the boom which, if something else equally casual and fortuitous had not subsequently arrested the flow of profits not made, prevented the damages from amounting to from $15,000 to $32,000.

There is no way of ascertaining the amount of such damages. They are not within the contemplation of the parties. They are not the necessary or natural consequence of the wrong complained of. They are not recoverable.

And the judgment of city court is affirmed.