## HANSEN AND HANSEN V. KIRTLEY.

1. EVIDENCE: BOOK ACCOUNTS. Joint action by the plaintiffs. *Held* that when the preliminary proof showed that a book of accounts offered in evidence was the book of one of the defendants, without disclosing that it was held and kept by him for himself and co-plaintiff, or that it was the book of both plaintiffs which he was accustomed to speak of and refer to as his own, it was inadmissible.
2. CASES APPROVED. *Vieths* v. *Hagge* 8 Iowa 183; *Young* v. *Jones*, Ib. 219; *Sloan* v. *Ault*, Ib. 229, as to how far money paid may be legitimate subject of a book charge, and proved by books, cited and approved.
3. WAIVER OF DAMAGES. The acceptance of an article after the day fixed for the delivery thereof does not operate as an absolute waiver of the damages sustained by the delay. It may be considered in evidence as tending to show a waiver, but its weight must depend upon the circumstances of each case.
4. NEGLECT. Where the lessor of a ferry delivered to the lessee an old boat and agreed to deliver a new one at a time named, and the lessee covenanted to keep said boat in as good repair as when received; it was held that although the covenant related to the new boat alone, the lessee was bound to take due and proper care of the old one; and that he could not recover of the lessor damages resulting from his own neglect to exercise such care.
5. APPLICATION OF PAYMENT. If A owes B a debt and pays him money, the law presumes in the absence of any agreement to the contrary, that it was the intention to apply it to the payment of the debt."

*Appeal from Clinton District Court.*

## TUESDAY, JUNE 4.

NICHOLAS and William N. Hansen entered into a contract with the defendant Kirtley, for the lease of a ferry across the Wapsipinicon river. The agreement was in writing, and so far as material will be found referred to in the opinion of the court. This action was brought to recover damages for certain breaches of this agreement on the part of said Kirtley, and also for money had and received by him, for work and labor done and performed by plaintiffs for defendant, for goods sold and delivered, &c. There was a trial by jury, verdict and judgment for plaintiffs. Motion for new trial overruled and defendant appeals.

*James Grant* for the appellant.

*Graham & Wright* for the appellees.

WRIGHT, J.—In this case several errors are assigned, which so far as necessary we will proceed to consider in their order.

I. And first, did the court below err in permitting the book of accounts offered by plaintiffs to be read in evidence. The record states that Nicholas Hansen, one of the plaintiffs, was introduced and testified : "This is my book of accounts, when I kept a ferry, for work done and money paid J. W. Kirtley. It is my book of original entries with people generally." And this as far as we have been able to discover was all the evidence touching the ownership of the book or of the accounts therein charged. The action was in the name of Nicholas and William N. Hansen, and it was most manifestly improper to permit evidence to go to the jury, of work done and money paid by Nicholas, without some other proof that it was done for the plaintiffs jointly. These books only tended to prove that Nicholas had done work and paid money, and not that he and William had. It is true the record shows that the court, in admitting the book in evidence, stated to the jury that the preliminary testimony was for the court, and that the book when introduced must speak for itself. But without further proof the court should not have allowed a book of accounts, showing dealings between defendant and one of the plaintiffs, to be used in evidence in an action brought by the person holding and owning the book jointly with another. If the book was held by Nicholas for the two, or if he had the management of the business of the firm (if a partnership existed,) or if it was in fact the account book of the two, which he was accustomed to speak of and refer to as his own, then it was admissable. None of these things appear, however, and we therefore feel constrained to hold, that under the circumstances disclosed, it should not have gone to the jury.

And in this connection we may remark that under the rules laid down in *Veiths* v. *Hagge*, 8 Iowa 183; *Young* v. *Jones*, Ib. 219, and *Sloan* v. *Ault*, Ib. 229, the instructions of the court as to how far money paid may be the legitimate subject of a book charge and proved by the books, would need some qualifications and limitations. As the case must be reversed, we need do no more than refer to those cases, as containing the views entertained by us of the statute.

II. By the terms of the lease, defendant was to furnish plaintiffs with a new boat by the first day of June next after its date. The boat was not furnished until in August, but was then placed in the river and used by the plaintiffs. Upon these facts, the defendant asked this instruction: "That if defendant failed to furnish the boat by the 1st of June, but did furnish it by the 1st of August, and the plaintiffs received and used the same, they cannot recover any damages for the non-delivery by the 1st of June." This was refused and this instruction given instead: "If the defendant failed to deliver the boat at the time agreed and the plaintiffs suffered damages therefrom, the mere fact that the plaintiffs used the new boat when it was finished, does not absolutely waive and bar the plaintiffs' right to recover the amount of such damages. The using of such boat under such circumstances, is at most only evidence to be considered by the jury in determining whether the plaintiffs did in fact waive the alleged intermediate damages.

In refusing the instruction asked and giving the other there was no error. In stating to the jury that " the using of the boat was only evidence to be considered in determining whether there was a waiver," we do not understand the court to have directed them as to the weight to be attached to it. Whether it was strong or weak would of course depend upon the circumstances. That such use was not an absolute waiver of the plaintiffs' right to recover damages for the delay, is clearly stated, and that is the law we have no doubt. Mr. Parsons (2 Pars. Cont. 160,) states no contrary

doctrine. He is there speaking of the delivery and accept-
ance of articles *before* the day specified in the agreement,
and of an independent parol agreement to deliver them at
another time and place. Nothing of this kind appears how-
ever in the case before us.

III. The lease contains these provisions: "The said
Hansens are to have the use of my ferry on the Wapsipini-
con river, and the house and garden spot for one year from
the 6th of November, 1855, and I agree to furnish a new
boat by the 1st of June, 1856." "And the said Hansens
are to keep said premises and boat in as good repair as they
receive them." It also appeared in evidence that there was
an old boat used at the ferry at the time of the lease, which
however was in a very bad, leaky condition. On the trial
defendant proposed to prove that plaintiffs neglected to repair
the old boat and thereby it sank." The court held however
that the covenant to repair did not extend to the old boat
and rejected the evidence. The jury were instructed also,
that the covenant to repair in the lease, refers to the new
boat, but that without any such covenant, the plaintiffs
would nevertheless be bound to take reasonable and proper
care of the old one, and that if the damages which plaintiffs
claim in this respect, resulted not from the defendant's neg-
lect to furnish the new boat, but from the plaintiffs' neglect
to take reasonable and proper care of the old one, they are
not recoverable.

In our opinion the fair and natural construction of this
agreement is that given to it by the court below. It was
the evident expectation of the parties that the old boat was
to answer the purpose temporarily and only until the new
one was furnished. It was the new boat that was to be sur-
rendered to defendant at the expiration of the lease, and be
kept in repair, and not the old, for the latter, as shown by
the evidence, was in such a condition that to keep it up and
repair it would have involved an expenditure not contem-
plated by the parties. Then again the new boat alone is

mentioned, and but one boat mentioned in the covenant to repair.  And yet without such covenant plaintiffs could not neglect to take due and proper care of the old boat, for no man should be allowed to charge another for damages resulting from his own negligence or want of care.  Under the circumstances we think the defendant was not prejudiced in rejecting the testimony offered.

IV.  It seems that defendant had at a previous term of the District Court sued the plaintiffs, (in this action,) and recovered judgment against them for a balance which he claimed to be due on this lease.  To that action the defendants pleaded many and perhaps most of the matters sought to be recovered in this.  Before the trial of that suit however they withdrew their pleas and made no defense.  Under proper pleadings in this case testimony was introduced on this subject, and several instructions bearing thereon were given by the court.  Plaintiffs and defendant asked certain instructions which were all refused, except so far as given in the instructions in chief.  These instructions as asked, differ from each other for the most part only as they might be supposed to differ from the two stand points from which the parties viewed the case.  As a whole, we think the instructions in chief correctly express the general principles as claimed by each party and give to the jury proper rules for the determination of the points in controversy.  In one or two instances perhaps they may have tended to mislead and confuse.  Thus the jury were told, that "if one party is in debt to another and pays him money, the law will apply such payment to the debt due such person, if it is the intention of the parties that it shall be thus applied."  Now the objection to this is, that the jury might well infer that unless the *intention* of the parties to make the application was *affirmatively* shown in connection with the fact of payment, the law would not make the application.  The true rule is, however, that if A owes B a debt and pays him money, the law presumes, in the absence of anything shown to the con-

trary, that it was the intention to apply it to the payment of the debt. So again in the instructions given as to certain money received by defendant from the Western Stage Company, and which by the terms of the lease, he was to take and credit plaintiffs with, the usual clearness and perspicuity of the judge delivering the same is not preserved. As we understand the petition, the instruction asked, by defendant on this subject was not strictly applicable, and yet we are unable to perceive why any different rule should obtain with reference to this money, than any other received by the defendant in payment of the amount due him on the lease. If it was received by him it was by the very terms of the lease, in payment of a debt. Indeed it is more correct to say, that defendant agreed to accept the stage company as his debtor for the amount due from them, and to credit the lease to that extent; and as plaintiffs could not in this action recover back any money *paid* by them in discharge of the lease, (and the jury were so told,) we cannot perceive why the plaintiffs would be entitled to recover the money thus received from the stage company.

As the judgment must be reversed, upon the grounds above stated, we need not consider whether the verdict was warranted from the evidence.

Reversed.