INDUSTRIAL WORKS *v.* MITCHELL.

| 114 | 29 |
| d127 | 477 |

| 114 | 29 |
| 150 | 123 |

| 114 | 29 |
| 153 | ²572 |

| 114 | 29 |
| 156 | ²168 |

1. CONTRACTS — SALE OF MACHINERY — DELAYED DELIVERY — WAIVER OF DAMAGE.

The mere acceptance of machinery by a vendee, without protest, after the time specified for its delivery, and his appropriation of the same to his own use, do not constitute a waiver of his right to claim damages for the delay; nor does the giving of a note for the purchase price necessarily operate as such waiver.

2. SAME—DAMAGES—LOSS OF PROFITS.

The profits that might have been made under a government dredging contract, in case dredging machinery had been furnished according to the terms of a contract for its purchase, are not so speculative as to preclude their being made the basis of recoupment in an action for the purchase price of the machinery, where the government contract contemplated the performance of specified work at a specified price.

3. SAME—NOTICE OF COLLATERAL CONTRACT.

Where one selling machinery for a dredge, agreeing to deliver it at a specified time, has notice that the purchaser has a government contract for excavating, and needs a dredge stronger than the one he then possesses to enable him to do the work, he is liable to the purchaser for the loss of profits under such contract, occasioned by delay in the delivery of the machinery.

Error to Saginaw; Wilber, J. Submitted April 15, 1897. Decided July 16, 1897.

*Assumpsit* by the Industrial Works against John A. Mitchell and Chauncey E. Mitchell upon promissory notes. From a judgment for plaintiff, defendants bring error. Modified.

*James B. McMahon*, for appellants.

*H. H. Hatch*, for appellee.

MONTGOMERY, J. In the month of December, 1890, defendants had a contract for dredging for the government at Sand Beach, Mich. It became necessary for them to build a dredge to be used in performing their contract. They entered into a contract with the plaintiff, by the terms of which the plaintiff agreed to furnish and deliver the machinery necessary to be used in the dredge as early as March 1, 1891, at an agreed price. Plaintiff brought this action to recover upon notes given in renewal of notes previously given for the purchase price. Defendants sought to recoup damages occasioned by delay in not furnishing the machinery within the time prescribed, and for further delay resulting from defects in the machinery. The cause was tried before a referee, who made a special finding of facts and of law, and whose finding was affirmed by the circuit court. From the decision of the circuit court, defendants appeal.

The finding shows that no part of the machinery was delivered to the defendants until the 31st of March, 1891, and that, when the machinery was delivered, it was so badly constructed that it required 14 days longer to set it

up than it would have required had it been constructed in a workmanlike manner. There was a further delay of 3 days after the machinery was set up, because of improper construction of the dipper-handle machinery, and 9 days' delay because of other latent defects in the machinery. Altogether, a delay of 56 days occurred, and the referee finds that the net profit the defendants would have made during each of these 56 days would have amounted to $54.80, had they been able to use the dredge. The referee further finds that, before the making of the contract, defendants informed the plaintiff that they had a government contract for excavating at Sand Beach, and needed a dredge stronger than the one they then had with which to do the excavating under said contract; and to questions propounded by defendants' counsel answers were returned as follows:

"*Q.* Was the plaintiff informed that defendants had a government contract at Sand Beach, for which they desired to use their dredge?

"*A.* Yes.

"*Q.* Was plaintiff informed of the character of the digging or work intended to be done by the dredge?

"*A.* No, except that they wanted a stronger dredge than the one they had."

The principal question involved in this case is whether the defendants are entitled to recoup the loss of profits which the referee finds that they have suffered by reason of the delay in furnishing the machinery, and the further delay occasioned by furnishing defective machinery.

A preliminary question arises as to whether defendants had waived their right to claim damages for the delay. In answer to a question by the plaintiff, the referee found that, before the giving of the notes in suit, defendants had accepted and appropriated to their own use all the machinery manufactured and delivered under the contract, and it is contended that their acceptance and retention of the machinery, not having reserved any right to complain of a nondelivery on time, amounts to a waiver of all right to recover for the damages which they claim. The referee finds further upon this subject that—

"By the terms of the contract, there was a cash payment to be made on March 1st, and on the same day notes were to be given for the remainder of the purchase price. This was the same day provided for the delivery of the machinery at the hull of the dredge in Port Huron. This fact shows that the parties, when they made this contract, did not contemplate that the defendants were to have an opportunity to examine or test this machinery before making payment, and the payments were made without regard to the actual delivery of the machinery. The $2,000 cash payment was made on March 4th, about 30 days before the machinery was actually delivered. The plaintiff, by its Exhibit 79, on April 25th, almost 30 days before Streng had completed placing the machinery, made demand for the note under contract, and the note was given without reference to the actual condition of the machinery."

The acceptance of the machinery under the circumstances of this case as disclosed by the finding was practically an acceptance under compulsion. As was said by the court in *Ramsey* v. *Tully*, 12 Ill. App. 471: "To say that an acceptance, after the time for delivery had passed, under such circumstances, was voluntary in such sense as to evince an intention to waive their right to claim damages for the delay, would be a perversion of language. They did the best they could in the situation in which they found themselves placed." See, also, *Haven* v. *Wakefield*, 39 Ill. 509; *Hansen* v. *Kirtley*, 11 Iowa, 565; *Flannery* v. *Rohrmayer*, 46 Conn. 558 (33 Am. Rep. 36); *Ruff* v. *Rinaldo*, 55 N. Y. 664. The giving of the note under such circumstances is not conclusive of an intention to waive the claim for damages. See *Waterman* v. *Clark*, 76 Ill. 428; *Wheelock* v. *Berkley*, 38 Ill. App. 518. See, also, *Bodurtha* v. *Phelon*, 13 Gray, 413.

Plaintiff, however, contends that the inference from the circumstances found by the referee is that there was an intention to waive the claim for damages. But we think the findings as a whole do not sustain this view, and that the defendants are entitled to recoup such damages as they have shown in this case.

The case presents the vexed question as to when the profits lost by the party defeated of his contract by the wrongful act of another may be the basis for damages. The briefs of counsel on both sides in this case are full, and ably present the two different views which may be taken of the question, as applied to the facts in this case. The case of *Hadley* v. *Baxendale,* 9 Exch. 341, has been approved by most of the American courts, and by this court in *Hopkins* v. *Sanford,* 38 Mich. 611. The rule as stated in that case is that, where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered as either arising naturally, *i. e.,* according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it; and that, if the special circumstances under which the contract was actually made were communicated, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated; but, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in contemplation the amount of injury which would arise generally, and in the great multitude of cases, not affected by any special circumstances, from such a breach of contract. Applying the rule in *Hadley* v. *Baxendale, supra,* two questions naturally arise in this case: *First,* whether the profits which the referee finds that the defendants lost by reason of the default of the plaintiff are too speculative in their nature to admit them as a basis of recovery; and, *second,* what must be the

nature of the notice which the defaulting party has of the existence of a collateral contract to charge him with the loss of profits which might be made under it.

As to the first question, this court has frequently held, beginning with *Burrell* v. *Salt Co.*, 14 Mich. 34, that the fact that the loss to the injured party is in the nature of profits is not, in and of itself, a reason why the general rule that he should be indemnified for the loss sustained should not be applied. There is nothing in the term "profits" which has such terror to the courts as to prevent measuring a party's loss by proof showing the amount. It is true, there is a class of cases in which profits may not be recovered, namely, those cases in which the nature of the business in which the profits might have been earned is so uncertain and speculative in its character that it furnishes no reasonable basis upon which to make an estimate of loss. Such is not the case where either the contract sued upon, or the collateral contract, where the responsibility for its breach is fixed upon the defendant, consists of undertaking to do specific work for a specified price; and this is true even though in the performance of that work machinery as well as labor may be employed. See *Loud* v. *Campbell*, 26 Mich. 239; *Atkinson* v. *Morse*, 63 Mich. 276; *Leonard* v. *Beaudry*, 68 Mich. 312; *Fell* v. *Newberry*, 106 Mich. 542; *Barrett* v. *Veneer Works*, 110 Mich. 6. This case is undoubtedly of the class where, by the contract of defendants with the government, their profits depended upon no contingency except the performance of specified work at a specified price. There were no elements of uncertainty depending upon the state of the market. It is true, it is suggested that the state of the weather might affect the profits by interfering with the work as it was progressing; but this was certainly no more the case than in *Loud* v. *Campbell*, *supra*, which was a case of a breach of a contract for freightage, and the court said:

"It is not open to them [to appellants] to contend that the freight stipulated for by the contract might have been

defeated by some of the accidents of navigation or otherwise, when their own failure to keep the agreement prevented the defendants in error from proceeding to perform the acts which were to earn the freight."

What notice, then, is necessary before the defaulting party can be charged with the loss of the profits to be made upon the collateral contract by the other? On the one hand, the rule contended for is that not only must the parties have notice of such contract, but there must be something in the terms of the contract, read in the light of surrounding circumstances, which shows an intention on the part of the vendor to assume a larger engagement, a wider responsibility, than is assumed in ordinary contracts for the sale and delivery of merchandise. On the other hand, it is contended by the defendants that notice of the fact that this machinery was to be put to use in performing a contract with the government was sufficient notice that defendants expected to derive a profit from the business, and that the natural and necessary inference must have been that a failure to fulfill the contract by the plaintiff would result in the particular damage which did follow, namely, the loss of those profits. Mr. Sedgwick, in his invaluable work on Damages, at section 146, interprets the rule in *Hadley* v. *Baxendale*, *supra*, to include the proposition that the plaintiff may show certain special facts to have been known to the defendant at the time of the contract, which gave notice to him that a breach of the contract would result in an otherwise unexpected loss, and the plaintiff may recover his special loss. And at section 149 the conclusion is stated that, where *Hadley* v. *Baxendale* is followed, the plaintiff recovers such damages as are proximate and natural; and that, in ascertaining what are the natural consequences, we must take into account all the circumstances of the case, including all the facts bearing on the question which were in the knowledge of both parties, even though they be such as would not necessarily, without such knowledge, enter into it; and it is then further stated:

"It is on this principle that the plaintiff is allowed to charge the defendant with loss on subcontracts, sales, etc., on proving *notice*, which, in the absence of such notice, would not be treated as natural or expected consequences." 1 Sedg. Dam. § 149.

We think this correctly states the rule, and that, in a case where notice is brought home to the contracting party that the goods are purchased to be put to a particular use, he is chargeable with the consequences of a failure to perform, and with the results which such notice fairly apprised him would probably follow upon his breach of contract. See *Booth* v. *Mill Co.*, 60 N. Y. 487; *Richardson* v. *Chynoweth*, 26 Wis. 656; *Illinois Cent. R. Co.* v. *Cobb*, 64 Ill. 128; *True* v. *Telegraph Co.*, 60 Me. 9 (11 Am. Rep. 156). The case of *Goodrich* v. *Hubbard*, 51 Mich. 62, cited by counsel for the plaintiff, is not, we think, in conflict with this view, as in that case it was said: "There is no finding that this contract [the one between the parties] was made with reference to the fulfillment by defendant of the Stephens contract, and the evidence before him, to wit, the contract in suit, and which must be taken to express the whole contract of the parties, would not authorize such finding." The Stephens contract was not, therefore, considered.

It appears that the defendants suffered a delay of 56 days, which, at $54.80 per day, amounts to $3,068.80. The judgment will be modified accordingly. Defendants will recover costs of this court.

The other Justices concurred.