CHARLES FRASER *vs.* PETER SANFORD ROSS.

*Inspection of Goods—Notice of Rejection of Goods—Time of Payment—Construction of Mercantile Contracts—Waiver by Acceptance of Goods After Time of Contract.*

1. Where goods are sold subject to inspection by defendant, while the act of inspection does not bind conclusively the plaintiff (it being open to him to question and impeach it), yet the defendant is bound by the inspection, however far it may have gone. If the defendant sends a person to make the inspection who did not choose to inspect except as to size, or who is incompetent to determine as to quality, that is defendant's loss, for he is bound by the act of his agent in making the inspection.

2. When the inspection is to be made at a particular place, which is a point in transit, and not the point of destination to which the goods are sent

by the plaintiff, it is neither the duty nor right of the defendant to take charge of the goods not up to standard, and prevent them from being taken further.

3. While it is not the duty of the defendant to return the goods not up to standard, and which he is unwilling to receive, yet it is his duty to give notice within a reasonable time, of what he would not receive. Such notice varies according to circumstances.

4. If the contract appoints no time of payment, it is to be made upon the delivery and acceptance of the goods at the place of destination mentioned in the contract, or at the other place or places where they are in fact delivered and accepted, unless there is some usage or custom of the trade which fixes a different time of payment.

5. In construing a mercantile contract, the meaning and intention of the parties not expressed or declared in the instrument, may be ascertained by the usage or custom of the trade at the place where the contract is to be performed. Such usage or custom, however, must be general, uniform and notorious in the particular trade or business to which the contract relates, at the place where the contract was made or was to be performed.

6. The failure of defendant to draw out the plea of set-off, after notice from plaintiff so to do, and refusal of plaintiff to join issue thereon, is tantamount to an abandonment of the plea, and it cannot be considered in the case.

7. The acceptance of goods delivered after the time stated in the contract, is a waiver of the claim of recoupment on that ground.

(*June 16, 1898.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Harry Emmons* for plaintiff.

*Benjamin Nields* for defendant.

Superior Court, New Castle County, May Term, 1898—(No. 110 to September Term, 1897).

FOREIGN ATTACHMENT. See facts in charge of Court.

At the trial, Mr. Emmons, counsel for plaintiff, offered in evidence a letter from the defendant to the plaintiff dated December 30th, 1896, in regard to inspection of piling at Jersey City. Said letter was admitted subject to objection. At a later stage of the trial, plaintiff's counsel began to quote from the letter. Counsel for defendant objected to any reference to the

letter in any way to affect the contract, on the ground that it was irrelevant to the issue.

MR. EMMONS :—I will endeavor to show that the plaintiff made it one of the conditions of this contract in his letter of December 8th, 1896, to the defendant, that this inspection should be made by the defendant at Jersey City and that the latter should put one of his men there to make the inspection.   In this letter of December 30th, 1896, from the defendant to the plaintiff that same matter is referred to by the defendant.   I contend it is a very material part of this contract, and the whole case turns on it.   We propose to show by the witness that he made arrangements to have this inspection made there and that the defendant, in accordance with this condition in this contract, did make his inspections there.

LORE, C. J :—I understand that on December 8th there was a telegram sent by the plaintiff to the defendant and also a letter and that in the telegram he did not say anything about inspection, but in the letter he did.   To the telegram the defendant telegraphed an answer of acceptance and wrote a long letter on the same day containing the schedule or order before he had received the letter of the plaintiff in regard to the matter of inspection.   But suppose he had received both the plaintiff's telegram and letter and had seen fit to send this long letter stating specifically in terms the contract and yet did not mention anything about the inspection.   The question is whether it would, or not, be importing something else into the contract, if this letter of December 30th to the plaintiff is admitted.

GRUBB, J :—The admissibility of this letter is objected to. Let us first consider the matter as it stands before us.   Here is the situation :   On December 8th the plaintiff sent that telegram to the defendant.   On the 8th the defendant answered his telegram that he accepted it.   On the 9th it is presumed that the defendant's letter, or schedule, as he calls it, setting forth the terms, had been received by the plaintiff. If it had been received by the plaintiff and in that schedule setting forth specifically the terms of the contract the plaintiff knew that he had sent that alleged letter, he necessarily must know by the specific terms of

the schedule that that part of his letter of the 8th, that is the examination at Jersey City, was not in the schedule. Knowing that, he must either infer that that letter had not reached the defendant, or if it had that the defendant had not chosen to accept that part of the proposition. With that knowledge, either that he had not received it or that he had repudiated that part of it, he chose to accept the specific terms of that schedule. When he did that, we must presume that the contract was complete, and this could only be used for the purpose of showing a modification of this specific contract. How can we allow this letter to be admitted, except for the purpose of showing a subsequent modification or addition to the contract, which was completed by the plaintiff's unconditional acceptance by his letter of December 9th and the defendant's said schedule letter of December 8th. That, therefore in my judgment, is the question which we now have to decide.

SPRUANCE, J :—The question now before the Court arises upon the admissibility of a letter from the defendant to the plaintiff, dated December 30th, 1896, which we admitted subject to later objection when we should have the matter more fully before us. The objection now made is equivalent to a motion to strike the letter out.

Leaving out of account the correspondence, prior to the 8th of December, which is not material to the present inquiry, the first thing of importance is the following telegram from the plaintiff to the defendant, dated December 8, 1896 : "Can furnish eight-inch points eight cents ; ten-inch nine and a half, delivered on Harlem River. Wire answer." On the same day, the defendant, replied by telegram as follows : "Will accept your offer. Send full schedule by mail." On the same day, the defendant wrote to the plaintiff the long letter, in evidence, which on its face purports to be in reply to the plaintiff's telegram of the same date, and makes no reference to the plaintiff's letter of that date, which appears then not to have been received.

In the plaintiff's letter of December 8th is found the first allusion to the subject of inspection, which is as follows : "We

would also want you to put a man on the piling as they arrive at Jersey City, to inspect them at that point, so that if there should be any piling that would not pass it would not be shipped &c." Then comes the plaintiff's letter of December 9th in which he says : "Your letter of the eighth inst. at hand and contents duly noted and order entered in book," etc. This was an acceptance of the proposition contained in the defendant's letter of December 8th, but in that letter there was no allusion to the subject of inspection.

To the plaintiff's letter of December 8th, as to inspection, the defendant made no reply until the 30th of December when he wrote as follows : " You state in one of your letters that you wish us to inspect these sticks as they are unloaded on the arrival at Jersey City. We assume in billing them, delivery is called for at destination ; in any case we would not be apt to get the numbers of the cars at Jersey City. You should therefore make some arrangement with the freight agent to notify us of the arrival of the cars here, in order that we may inspect without delay."

While the other terms of the contract between the parties had been agreed upon as above stated, there is nothing shown as to any agreement between them in respect to the place of inspection until the letter of the defendant of the 30th of December, in which he in effect accepts the plaintiff's proposition that Jersey City should be the place of inspection. We therefore think that the defendant's letter of the 30th of December is material and admissible.

The defendant prayed the Court to charge the jury in part, as follows :

That acceptance after inspection was a condition precedent to any obligation upon the vendee, or the vesting of property in him.

*Benjamin on Sales, Sec. 701; Blackburn on Contract of Sale, 127; 174; Grier vs. Simpson, 8 Houst., 9; Pierson vs. Crooks, 115 N. Y., 539, also 12 Am. St. Rep., 831; Cole vs. Bryant, 18 So. Rep. 655; Holmes vs. Gregg, 28 Atl., 17.*

That any unequivocal act signifying an intention to reject

establishes a rejection and disproves an acceptance. The purchaser is not bound to return the rejected goods, or offer to return them or place them in neutral custody. The rejected goods continue the property of the seller who is bound to look after and care for his own. In this case, marking the rejected piles and fenders, and notifying plaintiff, amount to a rejection and disprove an acceptance.

*Grimoldby vs. Wells, L. R. 10 C. P., 391; Howard vs. Hoey, 23 Wend., 350; Lucy vs. Mouflet, 5 H. & N., 229; Brown vs. Hickson, 30 Atl., 96.*

SPRUANCE, J., charging the jury :

Gentlemen of the jury :—This is an action brought by Charles Fraser against Peter Sanford Ross, to recover $1352.26, the balance of the price or value of 4233 piles and 652 fenders, alleged to have been sold and delivered by the plaintiff to the defendant between the thirty-first of December, 1896, and the sixteenth of July, 1897.

It appears by the evidence, that the plaintiff was a dealer in timber, having his place of business in Philadelphia, and that the defendant was a wharf builder having his place of business in Jersey City, and that he was then engaged in the erection of certain piers and bulkheads in Harlem River for the City of New York.

The contract between the parties was made by correspondence. This correspondence began in the latter part of November, 1896, but was not material until the 8th of December, 1896, when the plaintiff telegraphed to the defendant an offer to furnish logs of certain dimensions at certain prices, and the defendant on the same day telegraphed his acceptance of this offer, and promised to send " full schedule by mail."

In further reply to the plaintiff's telegram, and in accordance with his own telegram, the defendant on the same day, December 8th, wrote a long letter to the plaintiff, giving an order for the timbers required, in which he set forth the kinds, quality, dimensions, places of delivery, prices, time of shipment, etc. To this the ~~defendant~~ *plaintiff*, the next day, December 9th, replied as·

follows: "Your letter of the 8th inst. containing schedule of sizes of piling &c. required for your work is duly received, contents fully noted, and orders entered on our books."

The said order of the defendant, dated December 8th, with the said acceptance of the same by the plaintiff, dated December 9th, constituted the contract between the parties at that time. It will be observed that thus far there had been no agreement between them as to the inspection of the timber by the defendant.

On December 8th the plaintiff wrote a letter to the defendant in which he said, "We would also want you to put a man on the piling as they arrive at Jersey City and inspect them at that point, so that if there should be any piling that would not pass they will not be shipped up to the works and at unnecessary expense to us."

By the testimony of the defendant and from an inspection of the papers in evidence, it clearly appears that this last mentioned letter had not been received by the defendant when he gave his order of December 8th, and there is no evidence of any reply to the same until December 30th, when the defendant, writing to the plaintiff as to other matters says: "You state in one of your letters that you wished us to inspect these sticks as they were unloaded from the cars into lighter at Jersey City. We assume, in billing them, delivery is called for at destination, in which case we should not be apt to get the numbers of the cars at Jersey City. You should therefore make some arrangement with the freight agent to notify us of the arrival of the cars here in order that we may inspect same without delay."

While as you have seen the contract was concluded by the plaintiff's acceptance on December 9th of the defendant's order of December 8th, the defendant's reply of December 30th to the plaintiff's proposition of December 8th, modified or added new terms to the contract in reference to the inspection.

But for this later agreement there would have been no inspection by the defendant until the logs arrived at their points of delivery. This arrangement did not change the places of delivery

as before agreed upon, but merely provided for inspection at Jersey City while the logs were in transit.

It is agreed that all of the 4235 piles and 652 fenders, mentioned in the plaintiff's bill of particulars, were shipped by the plaintiff to the defendant, and that they were all inspected by the defendant's agents at Jersey City.

Of these, 454 piles and 302 fenders were rejected by the defendant's agents at Jersey City as not up to the standard prescribed by the contract. These rejected logs were afterwards, with the others, delivered at the places specified by the contract, except a small number delivered at another place on account of the ice in the river, but the defendant refused to pay for the same.

The defendant was not bound to accept any logs which did not conform to the contract, but he was bound to accept such as did.

The plaintiff insists that the defendant's inspection at Jersey City was not fairly made, and that all of the logs shipped by him were such as the contract required.

The defendant's inspection at Jersey City was not conclusive upon the plaintiff, and it is your duty, after a careful examination of all of the testimony upon the subject, to determine whether the rejected logs, or any part of them, did or did not conform to the contract requirements.

The defendant claims that beside the logs rejected by him at Jersey City, there were others delivered which were not such as the contract required, which he was unable to use, and that he is not bound to pay for the same.

Under the agreement to make the inspection at Jersey City, the defendant was bound to accept at the points of delivery the logs which he did not reject at Jersey City. The failure to reject there was equivalent to approval. The alleged defects, if they existed, were patent, and such as any fairly competent person could at once discover. If the defendant approved, or failed to condemn oak logs which were not white oak, it is too late now for him to make objection on that ground. The inspection

agreed upon was not limited to measurements alone, but was to be as to all matters necessary to determine whether the logs came up to the contract description; and if the defendant inspected as to size only, or if his inspector was incompetent to determine as to quality and kind, that is his loss and he is bound by the inspection which he made at Jersey City. The plaintiff claims that it was the duty of the defendant, not merely to inspect the logs and determine what came up to the standard, but that it was also his duty to take charge of the logs rejected, and prevent them from going beyond Jersey City.

No such duty rested upon the defendant. Jersey City, the place of inspection, was only a point in the transit of the logs from the woods to the places where they were delivered by the plaintiff. The arrangements for the carriage of the logs by railroad to Jersey City, and thence by lighters to the place of destination, were made by the plaintiff who was responsible for the freight; the railroad men and the lighter men were the carriers of the plaintiff; and the defendant had no right to lay his hands on any of the logs, other than to measure them and inspect them, until they arrived at the points of destination.

The contract did not contemplate they should be in the possession of the defendant at Jersey City, or that he should interfere with them there, further than was necessary for the purpose of inspection.

It was not the duty of the defendant to store them on the wharf or on the railroad property, or to make any other disposition of them. At that time they were not his property, whether approved or disapproved, and he had no right to take the rejected or approved logs from the possession of the plaintiff or from the possession of the carrier, whether railroad or lighterman. If, on the other hand, the defendant usurped control and exercised ownership over the rejected logs, so as to prevent their being left at Jersey City, or if he afterwards appropriated them to his own use, he would be bound to pay for them.

It was the duty of the defendant within a reasonable time to notify the plaintiff of the result of the inspection informing

him what logs had been rejected as not conforming to the contract. You are to determine from the evidence whether such notice was given.

It was not the duty of the defendant to return to the plaintiff, either from Jersey City, or from the places where they had been delivered, the logs which were not such as the contract required and which for that reason had been rejected at Jersey City.

The defendant claims that there was a usage or custom of the trade giving to the purchaser a credit of 60 days after delivery and acceptance, with the right to pay at any time before the expiration of said credit, and deduct 2 per cent. for cash, and that he did within this period pay to the plaintiff $2248.14, and is therefore entitled to the discount on the same amounting to $44.97.

As the contract of the parties appoints no time of payment, the defendant was bound to pay for the timber upon its delivery and acceptance, unless there was some usage or custom of the trade which fixed a different time of payment.

In construing a mercantile contract, the meaning and intention of the parties, not expressed or declared in the instrument, may be ascertained by the usage or custom of the trade. Such usage or custom, however, must be general, uniform and notorious.

It is not enough that it be the usage or custom of one of the parties to the contract, or of some persons engaged in the trade, but it must be the general usage or custom of those engaged in the trade at the place where the contract was made or was to be performed ; so general that those who are there engaged in the trade are to be presumed to know of its existence.

On the other hand, it is not necessary that such usage or custom should be universal, or that it should prevail all over the country. It is sufficient that it be general, uniform and notorious in the particular trade or business to which the contract relates, at the place where the contract was made or was to be performed.

If you find from the evidence that such a usage or custom existed where this contract was made or to be performed, it is to be presumed that the parties had it in view when they made the contract, and intended to be bound by it.

In such case the defendant would be entitled to the discount claimed on such payments as he made to the plaintiff before the expiration of the 60 days' credit, but not on the amounts paid by him within that time for freight, lighterage and demurrage.

The defendant claims an allowance of $302.05, the amount of his alleged expenses in the removal of the rejected logs from Sherman's Creek and 146th Street to Weehawken, and taking care of the same.

This claim is not included in the notice of recoupment and cannot therefore be allowed as a recoupment.

Nor can it be allowed under the defendant's plea of set-off. The plaintiff joined issue on all of the other pleas of the defendant, but declined to reply to the plea of set-off until the same should be drawn out.

The defendant failed to draw out this plea, which is equivalent to an abandonment of it, and issue was never joined upon it.

There being therefore no pleading in the case under which this claim can be made, it cannot be allowed by you.

As the contract provided that the delivery of the logs should be commenced within ten days, and completed within sixty days after the making of the contract, and as it appears by the plaintiff's bill of particulars and by the evidence, that neither of these conditions was complied with, the defendant insists that he is entitled to recoup in damages for the failure of the plaintiff to deliver within those times.

The defendant might have refused to receive the logs after the times fixed by the contract, but as he did not do so, but accepted them, he waived and cannot now claim any damages on account of the failure of the plaintiff to deliver within the contract time.

The plaintiff is entitled to interest on such sum as you may

find to be due to him from the time the same became due and payable.

You are the sole judges as to all disputed questions of fact, but it is your duty to accept the interpretation of the written contract and the statement of the law as given to you by the Court.

Verdict for the plaintiff for $676.13.