BAMBERGER BROS., Appellee, v. W. H. BURROWS, Appellant.

Sale contracts: DELIVERY. Time for delivery may be made the essence of a contract of sale, and when fixed is generally so regarded; however it may be waived or a new time fixed, but that will not constitute a new contract, and the same rules regarding delivery will apply.

Same: FAILURE TO DELIVER: RESCISSION: DAMAGES. Where time of delivery is made the essence of an entire and indivisible contract of sale, and for a stated consideration as a whole, failure to make timely delivery of the whole or a portion of the subject of purchase will authorize a rescission and recovery of damages for the breach, unless there has been a waiver of the breach, which is usually a question for the jury; and where the contract embraces a given quality of goods it is immaterial that a separate price is fixed upon each lot number of the articles purchased.

Same: ENTIRE AND SEVERABLE CONTRACTS: HOW DETERMINED. The entirety of a contract depends upon the intention of the parties and not upon the divisibility of the subject matter, although the severable nature of the latter may assist in determining the intention; nor will the mode of ascertaining the price change the effect of an agreement shown to be entire.

In this case there was an order for a quantity of clothing to be delivered at a fixed time. The price of different articles was separately stated. There was a shipment of a portion of the

order and a retention of the same for a time when it was returned to the seller. *Held,* that the character of the contract, whether entire or severable, and whether any part of the goods were delivered within the agreed time were questions for the jury.

Same: DELIVERY: RESCISSION: WAIVER. Mere receipt of part of a stock of goods and retention in expectation of soon receiving the balance is not a waiver of the right to rescind for failure to deliver within a specified time: nor is it a waiver of the right to demand damages for the delay in delivery.

Same: RESCISSION: EVIDENCE. Rescission of a contract need not be by an express repudiation of it, but if the acts of one party, known to the other, clearly indicate such an intention it is sufficient. Evidence held to require submission of the question whether the acts and correspondence of the buyer of goods constituted a rescission of the purchase.

*Appeal from Cedar Rapids Superior Court.*—HON. JAMES H. ROTHROCK, Judge.

SATURDAY, JANUARY 15, 1910.

ACTION to recover the purchase price of certain clothing sold to defendant. Defendant admitted the purchase, but pleaded a rescission of the contract, and also interposed a counterclaim for damages. Trial to a jury. Directed verdict for plaintiff, and defendant appeals.—*Reversed.*

*Barnes & Chamberlain,* for appellant.

*C. D. Harrison,* for appellee.

DEEMER, C. J.—As there was a directed verdict for plaintiff, that version of the case most favorable to defendant must, for the purposes of this appeal, be accepted as true. Defendant determined to open a clothing store in the city of Cedar Rapids some time during the year 1907, and concluded to create a children's department as a part of the business. Plaintiffs are juvenile clothing merchants

located in New York City. During the summer of the year 1907 defendant went to New York, visited the plaintiff firm, and placed an order with them for a certain bill of children's clothing. This order was in writing, of which the following is a copy: "Leon J. Bamberger, Irving W. Bamberger, Edward S. Bamberger. Order No. — House. July 2, 1907. Bamberger Brothers, 3 and 5 Waverly Place, New York. Please make for W. H. Burrows, Cedar Rapids, Iowa, ship via Star Union, in care of C. R. I. & P., on or about Aug. 1st to 10th. Terms, 7-10, 60 Ex., 9-10. Salesman, Van. References: ——." The items were given by lot number and quantity, and the prices affixed were for each lot number; that is, the items were not affixed to each garment, but the aggregate of all of the same number. The goods were to be shipped August 1st to 10th. The order was not signed by either of the parties. Defendant also bought a lot of children's goods from another merchant. Defendant opened his store in September of the year 1907; but, for reasons to be hereafter stated, he did not open a children's department until a date which is immaterial to our inquiry.

Some of the goods which defendant had ordered from plaintiff were shipped on August 31, 1907, but these did not reach defendant until about September 10th or 12th, when they were taken to his storeroom. Other goods were shipped about September 17th, but they did not reach defendant until September 20th, when they were received by him and placed in his store. None of these goods were placed in defendant's stock or offered for sale, and thereafter, and on or about the 4th day of October, no more goods being received, defendant returned them to plaintiff. Plaintiff thereupon reshipped them to defendant; but defendant refused to receive them, and the last that is known of them, as shown by the record, is that they were in the possession of the railway company which brought them to Cedar Rapids. The defendant gave the following reason

. as to why he did not open the children's department: "The reason that I was not in a position to open up one that was satisfactory; I had only a sprinkling of goods, and, in order to compete with the lines of boys' and children's goods that were here, I didn't think I could make a creditible showing. September is the best month in the year for the sale of such clothing. September, October, and November we consider the three best months. Up to the 4th day of October I had received but $360 worth of the clothing. The clothing shipped by them was not complete without the balance of the order, and I could not offer it to as good an advantage as though I had received the entire bill as I ordered it. The line was incomplete, and that is the reason I returned it. I paid the freight on the goods in returning it. The amount was $10." Defendant offered to show the amount of expense he was to in preparing for the opening of the department, and also the amount of his expense in going to New York to purchase the clothing, but the court would not permit him to do so. The reason for unpacking the goods is thus stated by defendant: "As the stuff came in we unpacked every case that came. And of course we expected all of the goods would be along, and so, as the stuff came in, I unpacked it and put it in the store. When I returned it, I returned every item I received from plaintiffs."

There was nothing to indicate that plaintiff did not have the goods ordered in stock, and nothing was said about its having to manufacture or purchase any of them. Some of the goods shipped were not of the pattern ordered, but defendant is not complaining of this now. Defendant concluded not to open the children's department about October 1, 1907. The only other material testimony in the case is in the form of letters, which we shall now set out chronologically.

July 29th defendant wrote plaintiff as follows: "Marshalltown, Iowa, July 29, 1907. Bamberger Bros., New

York. Gentlemen: Owing to delay in getting my room in shape, will ask that you make shipment on August 20th. This will give you plenty of time to make complete shipment on that date. Very truly, W. H. Burrows."

On August 28th he wrote: "Cedar Rapids, Iowa, August 28th, 1907. Bamberger Bros., N. Y. Gentlemen: I would like to know by return mail what you are going to do about the goods on order for me and which you promised to have ready August 10th sure. Very truly, W. H. Burrows."

On August 31st plaintiff wrote defendant this letter: "New York, August 31, 1907. Messrs. W. H. Burrows & Co., Cedar Rapids, Iowa. Copy. Gentlemen: Answering your esteemed favor of August 28th, we beg leave to say that your goods will be shipped today and inclose you bill for same. Hoping these goods will please you, and to be favored with many reorders, we remain, Yours very truly, Bamberger Bros. Dict. E. S. B."

On October 1st defendant wrote plaintiff: "Cedar Rapids, Iowa, October 1, 1907. Messrs. Bamberger Bros., New York, N. Y. Gentlemen: The boys' and children's clothing that I ordered from other houses at the time I placed my order with you for fall delivery have disappointed me in shipment and because of the delay I am not in a position to open up a satisfactory children's department, as when I do open that department I want it to be among the best. I write you to ask you if you would relieve me of the goods which you have shipped me and I assure you I will appreciate it if you will allow me to return them to you. I feel that this is the best thing for me to do this season if I can arrange matters satisfactorily with you. I will not try to do anything on the children's stuff this fall and get in shape for a good department in the spring. Now I do not desire to force this upon you, but if you will favor us with the return from us with the exception of the children's overcoats which you made es-

pecially for me, I assure you that it will not be forgotten and for the spring will promise to do more than enough business to recompense you for any annoyance that this may cause you. I have just opened up my store and things have opened up decidedly satisfactory for me and the prospects are very flattering, but I realize that if I were to do business with a handful of children's clothing it would be worse than if I did not use that department at all. Thanking you in advance for your decision in this matter which if favorable I assure you would be appreciated by me, I remain, Yours very truly, W. H. Burrows."

Again on October 4th he wrote: "Cedar Rapids, Iowa, October 4, 1907. Messrs. Bamberger Bros., N. Y. Gentlemen: I have returned to you today the small amount of children's clothing you sent me. I am indeed anxious that this should in every way be pleasant to you, but I find owing to the unsatisfactory deliveries on children's clothing this season that it would be impossible for me to open up a satisfactory children's department and for that reason have decided to entirely dispense with the boys' and children's departments this fall, and for spring to put in an entire juvenile and boys' department, at which time I shall have the entire upstairs over my present quarters and the bank next to me; and I promise you for your consideration in this matter to give you my juvenile and boys' business. I will be in the market early for my stock next season so that I can get the goods and deliveries in time. I want you to appreciate my position in this matter and do the best you can by me as I am indeed anxious that our business relations be pleasant to you. Thanking you in advance for your consideration in this matter, I am, Indeed sincerely, W. H. Burrows."

Plaintiff wrote defendant on October 5th this: "New York, October 5, 1907. Mr. W. H. Burrows, Cedar Rapids, Iowa. Copy. Dear Sir: We have your esteemed

favor of the 1st inst., and same is noted. All your goods were made special and as per your instructions and wires we rushed forward and shipped ahead of other people's goods. We are extremely anxious to merit your business, but regret we are in no position to accept the return of these goods as we are getting ready for next spring. We regret that the other manufacturers did not ship on time, but this is no fault of ours, and while we are willing to extend the time of payment, if you so desire, we regret we are unable to accept the return of these goods. With kind regards, and always glad to serve you, we remain, Yours very truly, Bamberger Bros. Dict. E. S. B."

And on the 8th of October they again wrote: "New York, October 8th, 1907. Mr. W. H. Burrows, Cedar Rapids, Iowa. Copy. Dear Sirs: Yours of the 4th inst. to hand and noted. Our previous letter of October 5th fully explained our position as we are unable to accept the return of these goods. They will not be taken from the depot and will stay there at your risk. We will therefore advise you to inform the railroad company to return these goods to you at once. Yours very truly, Bamberger Bros. Dict. E. S. B."

On the same day defendant wrote plaintiff: "Cedar Rapids, Iowa, October 8, 1907. Messrs. Bamberger Bros., New York, N. Y. Gentlemen: I am in receipt of your letter and will say that I have already returned by prepaid freight the goods, as I was anxious to get them back and feel that if you had them there you would be able to make disposition of them better than to wait. Now I want you to look at this in the proper light as I want my business relations to be pleasant with you. You said that you shipped the goods to me on time, which, of course, you did not, and there are still some of them on back order, but I do not care to have this enter into it as I want to adjust this matter pleasantly for both of us and assure you of my future business and appreciation for what you do

for me in this matter. If you sustain any loss by reason of this, kindly notify me of it and I will gladly adjust same. Thanking you for what you do for me in this matter, I am, Very truly, W. H. Burrows."

On October 11th plaintiff wrote defendant: "New York, October 11, 1907. Mr. W. H. Burrows, Cedar Rapids, Iowa. Copy. Dear Sir: Replying to your favor of the 8th inst., we have already advised you that we can not accept the return of these goods as they were made especially for you. These goods will be at your risk at the railroad company and we would say to you that it would be advisable for you to inform them to return the case to you. With kind regards, we remain, Yours very truly, Bamberger Bros. Dict. E. S. B."

On October 16th defendant wrote plaintiff: "Cedar Rapids, Iowa, October 16, 1907. Messrs. Bamberger Bros., New York, N. Y. Gentlemen: I am in receipt of your favor of the 11th and would say that inasmuch as you feel that this is a one-sided matter, I have taken the same stand that you have concerning the goods returned; and will say that since you did not make me deliveries on time and still have goods on back order, you have caused me a serious loss, which I have sustained by reason of this, and your not fulfilling your contract, has compelled me to return the goods to you, I shall expect you to receive them and they are in the freight-house there subject to your risk. Do not write further regarding this matter, as I have tried to be fair with you in the matter, but as you do not seem to reciprocate we will let the matter stand just as it is, so far as I am concerned. Yours truly, W. H. Burrows."

October 19th plaintiff wrote defendant: New York, October 19, 1907. Mr. W. H. Burrows, Cedar Rapids, Iowa. Dear Sir: We have your favor of the 16th inst. and same is noted. We do not think that we will have much difficulty in establishing our claim or proving that

we filled our contract, as we have before us your letters acknowledging this fact. If this bill is not paid when due, we shall promptly sue you and we do not think you will care for this. In the meantime under no circumstances will we take the case from the railroad company, and you can use your own discretion in the matter, but if the bill is not paid, we will start suit at once. With kind regards, we remain, Yours very truly, Bamberger Bros. Dict. E. S. B."

To this defendant responded as follows: "Cedar Rapids, Iowa, October 21, 1907. Messrs. Bamberger Bros., New York, N. Y. Gentlemen: I have yours of the 19th inst. and in reply to it will say that if you will read my letters carefully, you will find that I did not say that you delivered me goods on time, for my copies from you, and bills also, will show that I did not and that up to date you have not completed my order placed with you. I tried to be fair with you, but it seems that you feel that these matters are one-sided entirely and inasmuch as you feel that way I will have to take the same positive stand that you have, and if a contract is good at all, it is good for both of us. Yours truly, W. H. Burrows."

This elicited the following from plaintiff under date of October 24th: "New York, October 24, 1907. Mr. W. H. Burrows, Cedar Rapids, Iowa. Dear Sir: Replying to your favor of the 21st inst., as already written, we feel that we have been as fair as possible in the matter, and all that we can say is, that if the bill is not paid when due we will instruct our attorneys in Cedar Rapids to start suit at once. It can then be determined if you can act in the arbitrary way as you have done. This is the last letter we shall write regarding this, but we state positively that the account must be paid when due. Yours very truly, Bamberger Bros. Dict. E. S. B."

Defendant then wrote the following under date of October 26th: "Cedar Rapids, Iowa, October 26, 1907.

Messrs. Bamberger Bros., New York, N. Y. Gentlemen: In reply to your favor of the 24th would say that you can do what you wish; you have been as unfair as possible in this matter and you are at perfect liberty to have your attorney start collection of bill at any time you desire. I have tried to do what was fair in this matter and more, as I agreed to recompense you for any loss, but you seem to think that this is a one-sided matter and it is best to let it stand so. Yours truly, W. H. Burrows."

This closed the correspondence, and upon this record we are to decide whether or not the court erred in its rulings on testimony and in directing a verdict for the plaintiff. There is one further quotation from defendant's evidence which should be set out. He testified as follows: "I never asked the plaintiff to ship the balance of my order. I ordered children's clothing from three different houses. I received about two-thirds of these goods which I ordered from the other houses than plaintiff. I returned all of those goods and ordered shipments stopped at about the same time I returned the goods to plaintiff early in October. The goods I received from the other houses which I returned came to me before plaintiff's goods, but I returned them."

In the law of sales it is a settled rule that time may be of the essence of the contract; and, when the time for delivery is fixed, it is generally so regarded. Therefore, if the seller fails to make delivery on the date so fixed, the buyer may rescind or recover damages for the seller's breach of contract. *Norrington v. Wright,* 115 U. S. 188 (6 Sup. Ct. 12, 29 L. Ed. 366); *Higgins v. Delaware Co.,* 60 N. Y. 553; *Sun Pub. Co. v. Foundry Co.,* 22 Or. 49 (29 Pac. 6); *Cromwell v. Wilkinson,* 18 Ind. 365; *Booth v. Co.,* 60 N. Y. 487; *Crane v. Wilson,* 105 Mich. 554 (63 N. W. 506); *Welsh v. Gossler,* 89 N. Y. 540. Of course the time fixed may be waived, or a new time for delivery

1. SALE CONTRACTS: delivery.

fixed; but this is not regarded as the making of a new contract, and performance must be had according to the new arrangement. *Bacon v. Cobb,* 45 Ill., 47; *McCombs v. McKennan,* 2 Watts & S. (Pa.) 216 (37 Am. Dec. 505); *Cummings v. Arnold,* 3 Metc. (Mass.) 486 (37 Am. Dec. 155); *Cuff v. Penn.,* 1 Maule & Sel. 21; *Ogle v. Vane,* L. R. 2 Q. B. 275.

There can be no doubt upon the record before us that the time for delivery was fixed in the original contract, and that it was extended by request of the defendant until August 20th. Plaintiff concedes that it did not make shipment as of that date, and it is also shown that it never did ship all the goods ordered. This default on its part authorized the defendant to rescind the sale, or to bring action to recover the damages sustained by him. Again it seems to be well settled that for failure to deliver a part of the goods ordered within the time fixed rescission may be had of the entire contract, in the absence of stipulation in the agreement to the contrary. See for a review of the authorities upon this and kindred questions, *Quarton v. Am. Law Book Co.,* 143 Iowa, 517. If the contract consists of several distinct and independent parts, each of which can be performed without reference to the other, a failure of one of the parties to perform one of the terms does not authorize the other to rescind the whole and refuse to accept performance of the other terms by the party so in default. *Myer v. Wheeler,* 65 Iowa, 390; *Osgood v. Bauder,* 75 Iowa, 550, and other like cases. But when the goods are purchased as an entirety for a definite and stated purpose, and the breach goes to the whole consideration, the rule first stated applies. See *Myer v. Wheeler, supra; Quarton v. Law Book Co., supra.*

In the instant case the order was for a given quantity of goods, was an entirety, and although separate prices were given upon each lot number of goods, it was the un-

2. SAME: failure to deliver: rescission: damages.

derstanding of the parties that all should be delivered, and it was not left to plaintiff's option to deliver such of the goods as it saw fit and neglect or refuse to deliver the others. The object and purposes of the purchase were clearly stated to plaintiff at the time the order was placed, and it could not deliver a part and claim that it had complied with its contract. *Cleveland v. Rhodes,* 121 U. S. 255 (7 Sup. Ct. 882, 30 L. Ed. 920); *Stevenson v. Burgin,* 49 Pa., 36; *Rommell v. Wingate,* 103 Mass., 327; *Bedell v. Kowalsky,* 99 Cal., 236 (33 Pac. 904); *Barton v. Kane,* 17 Wis., 38 (84 Am. Dec. 728); *Perry v. Iron Co.,* 16 R. I. 318 (15 Atl. 87). Of course the buyer may waive the default, keep the part shipped, and become liable for the payment thereof. *Avery v. Wilson,* 81 N. Y. 341 (37 Am. Rep. 503); *Churchill v. Holton,* 38 Minn. 519 (38 N. W. 611). Whether or not there was a waiver under such circumstances is generally a question of fact for a jury. Here again the rule does not apply if the contract be severable. In such cases the failure of one party to perform one part does not justify the other in refusing to accept performance of the residue. Nor can he, after accepting a part, refuse to pay for the part so secured because the remainder was not delivered. *Oil Co. v. Brewer,* 66 Pa. 351; *Herzog v. Purdy,* 119 Cal. 99 (51 Pac. 27). But even here the purchaser may have his action for failure to deliver the residue as agreed. See cases last above cited.

The rule whereby to determine whether a contract is severable or entire is thus stated by Mr. Parsons in his work on Contracts ([7th Ed.] vol. 11, pp. 517-520): "If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held severable. . . . But if the consideration to be paid is

3. SAME: entire and severable contracts: how determined.

single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." See, also, *Barrie v. Earle,* 143 Mass. 1 (8 N. E. 639, 58 Am. Rep., 126), where the rule is thus set forth: "A majority of the court think that this is such a contract as is described in *Badger v. Titcomb,* 15 Pick. (Mass.) 409, 413 (26 Am. Dec. 611), where, 'although the agreement is entire, the performance is several,' or, as is said in *Denny v. Williams,* 5 Allen [Mass.] 1, 4, a contract 'one and entire in its origin, and yet, looking to the performance of different things at different times, it may be divisible in its operation'; that an action under it could be maintained for the price of each portfolio when each was delivered, but that the contract is one entire agreement to take one copy of a publication made up of ten parts or portfolios, which together should constitute the Art Treasures of America, and that it is not a contract containing ten distinct and independent agreements to take ten different portfolios, one under each agreement. See *Vinton v. King,* 4 Allen [Mass.] 562." Whether or not a contract is entire or severable depends upon the intention of the parties. *Loud v. Water Co.,* 153 U. S. 564 (14 Sup. Ct. 928, 38 L. Ed. 822); *Huyett v. Edison Co.,* 167 Ill. 233 (47 N. E. 384, 59 Am. St. Rep. 272); *State v. Davis,* 53 N. J. Law, 144 (20 Atl. 1080); *Morris v. Wibaux,* 159 Ill. 627 (43 N. E. 837); *Easton v. Jones,* 193 Pa. 147 (44 Atl. 264); *Widman v. Gay,* 104 Wis., 277 (80 N. W. 450); *Green v. Hanson,* 89 Wis. 597 (62 N. W. 408). As said in *Morris'* case, *supra:* "The entirety of a contract depends upon the intention of the parties, and not upon the divisibility of the subject-matter. The severable nature of the latter may often assist in determining the intention, but will not overcome the intent to make an entire contract when that is shown. Nor will the mode of measuring the price, as by the bushel, ton, or pound, change the effect

of the agreement when it is entire. *Shinn v. Bodine,* 60 Pa. 182 (100 Am. Dec. 560)." Under the testimony as above recited a jury would have been justified in finding that the contract in this case was entire and not severable; that plaintiff did not deliver the goods, or any part thereof, within the time fixed or as extended at defendant's request, and that plaintiff was not entitled to recover even for the goods shipped, unless it be for a matter upon which plaintiff places its chief reliance, to wit, an acceptance by defendant of the goods shipped and retention thereof for more than a reasonable time, or failure to do such acts as amounted to a rescission of the contract.

Of course a breach of condition as to time of delivery may be waived by the receipt and retention of the goods without objection. The mere receipt and retention of the goods as shown by the record in this case did not, as a matter of law, amount to a waiver of defendant's right to rescind. Indeed there are many cases which hold that a buyer does not, by accepting a late delivery, waive any claim he may have for damages arising from the delay. See Blackburn on Sales, 524; *Belcher v. Sellards* (Ky.), 43 S. W. 676; *Dignan v. Spurr,* 3 Wash. St. 309 (28 Pac. 529); *Strain v. Mfg. Co.,* 80 Texas, 622 (16 S. W. 625); *Harber v. Cycle Co.,* 151 Ill., 84 (37 N. E. 676); *Ramsey v. Tully,* 12 Ill. App. 471; *Hansen v. Kirtley,* 11 Iowa, 565; *Industrial Works v. Mitchell,* 114 Mich. 29 (72 N. W. 25). *Contra: Minneapolis v. Hutchins,* 65 Minn. 89 (67 N. W. 807); *Baldwin v. Farnsworth,* 10 Me. 414 (25 Am. Dec. 252).

4. SAME: delivery: rescission: waiver.

Our rule, as stated in the *Hansen* case, *supra,* is as follows: "In stating to the jury that 'the using of the boat was only evidence to be considered in determining whether there was a waiver,' we do not understand the court to have directed them as to the weight to be attached to it. Whether it was strong or weak would of course

depend upon the circumstances. That such use was not an absolute waiver of the plaintiffs' right to recover damages for the delay is clearly stated, and that is the law we have no doubt." See, also, *Pully Co. v. Mills Co.*, 121 Iowa, 247. In the latter case it is said: "Acceptance and use of goods after the date specified therefor in the order have been held to defeat a claim for damages on account of such delay. *Fraser v. Ross*, 1 Pennewill (Del.) 348 (41 Atl. 204); *Toplitz v. King B. Co.*, 20 Misc. Rep. 576 (46 N. Y. Supp. 418). The better doctrine, and the one most generally prevailing, is that, while such acceptance and use are evidence from which, with other circumstances, a waiver of the claim may be found, yet, ordinarily speaking, the purchaser may accept the delayed delivery, and recoup the damages, if any, in an action by the vendor for the purchase price. *Hansen v. Kirtley*, 11 Iowa, 565; *Jeffrey Co. v. Central Co.* (C. C.), 93 Fed. 408; *Ramsey v. Tully*, 12 Ill. App., 463; *Ruff v. Rinaldo*, 55 N. Y. 664; *Merrimack Co. v. Quintard*, 107 Mass. 127. Under this rule the defendant's acceptance of the belated delivery was not in itself a waiver of its right to demand damages, and it could have rightfully insisted upon an allowance thereof in reduction of the contract price." So that the acceptance of the goods did not in itself deprive defendant of his right to interpose a counterclaim for failure to deliver in time. Nor did it, under the circumstances, amount to a waiver of his right to rescind, or estop him from repudiating the contract and returning the goods.

The two difficult questions in the case are: First, did the acts and conduct of the defendant after the receipt of the goods amount to a rescission? and, second, did

5. SAME: rescission: evidence.

defendant show, or offer to show, any such damages due to nondelivery within the time specified as the law will recognize? The correspondence which passed between the parties with reference to the return of the goods has been set out *in extenso*.

Plaintiff claims that these letters do not amount to a rescission, and should not be held to be more than a request on defendant's part of plaintiff that it cancel the order and accept a return of the goods for defendant's accommodation. It must be conceded that the letters are somewhat ambiguous; but it does appear that defendant returned the goods, and that he laid some emphasis upon the fact that plaintiff had not shipped the goods as agreed. It is not always necessary that the buyer shall in express terms repudiate the contract or countermand the order. Such a result may be inferred from his conduct. If his acts clearly show an intention to repudiate the contract, no matter in what form expressed, this, if known to the other party, constitutes a rescission. *Spaulding v. Hanscom,* 67 N. H. 401 (32 Atl. 154); *State v. Davis,* 53 N. J. Law, 144 (20 Atl. 1080); *Churchill v. Price,* 44 Wis. 540; *Berkey v. Leferbee,* 125 Iowa, 76; *Gates v. Bliss,* 43 Vt. 296.

We are inclined to think that the question of rescission was one of fact for a jury, and not of law for the court. True, defendant's letters were not as pointed, perhaps, as they might have been. They may well be called "sugar-coated." But as defendant did insist upon his right to return the goods because not shipped in time, it was for the jury to say whether this was the cause for the return, or whether it was because others had not shipped, or because he wished a mutual rescission which plaintiff did not see fit to grant. We believe this question was for a jury under proper instruction. It is doubtful whether defendant offered sufficient testimony of damages which the law will allow in the event no rescission is found. Upon that point we express no opinion at this time. Perhaps had the court permitted defendant to follow up the testimony offered by him, he might have shown that the damages claimed, or some of them, were the proximate cause of plaintiff's failure to deliver. All that we need say now is that defendant should have been permitted to

show such damages as the law will allow, due to plaintiff's breach of contract. These can not well be determined in advance. Of course, if defendant waived strict performance and accepted the goods, and was estopped from denying an acceptance, no damages can be allowed, save for plaintiff's failure to send goods not shipped. What these may be we shall not attempt now to state.

That the trial court erred in its rulings and orders in this case is apparent from the foregoing discussion. On account thereof the judgment must be, and it is, *reversed.*