## JEFFREY MFG. CO. v. CENTRAL COAL & IRON CO.

(Circuit Court, D. Kentucky. April 1, 1899.)

1. CONTRACT—DELAY IN PERFORMANCE—WAIVER.

Where plaintiff agreed to furnish certain machinery by a fixed time, but failed to perform his contract in time, and defendant did not cancel the contract, or release plaintiff from its obligation thereunder, or reject the machinery and material, when tendered, as coming too late, but accepted them and put them into use, the stipulation as to time was waived, and the obligation to pay the agreed price was complete, subject to the right to recoup the damages, if any liability therefor had been incurred by plaintiff.

2. SAME—DAMAGES—MEASURE.

Plaintiff agreed to furnish certain machinery within 90 days from the approval of the contract; foundation and material therefor to be put in place, ready for machinery, by defendant, the purchaser, but to be constructed under plans furnished by plaintiff, who was to furnish experts to superintend the erection of the plant. Shortly after the execution of the contract, plaintiff demanded a modification thereof so as to make the notes given for the price payable in gold. The delay consequent on this desired change resulted in failure to perform the contract within the specified time. The plan for the construction of the foundation was not supplied promptly by plaintiff, and defendant did not put in the foundations ready for the apparatus until after the 90 days had expired within which the contract was to be performed. Defendant alleged that its failure to construct the foundations was the result of the failure of plaintiff to furnish the plans, and of plaintiff's announcement that it would not perform the contract unless the alterations in the contract were made. Held, that as the failure of defendant to furnish the foundations in due time was, to a certain extent, the fault of defendant, in that, if it had performed on its part, the damages alleged to have resulted to it from the delay would have been in part reduced, defendant will not be allowed the entire amount of damages which it claims to have suffered by reason of the delay in the completion of the contract, but the amount of interest that it would have paid on the notes that it was to give for the purchase price, but which it failed to give, from the time the work was accepted until the time of bringing suit.

Barnett, Miller & Barnett and H. B. Arnold, for complainant.

Humphrey & Davie, for defendant.

EVANS, District Judge. On the 5th day of June, 1896, the complainant and defendant entered into a contract whereby the former was to furnish to the latter, f. o. b. cars at Central City and Ren-

der, Ky., certain machinery and materials specified in the contract, for the agreed price of $15,500, to be paid in 30 equal monthly notes, to be dated 60 days from the starting of the power plant, provided that the entire plant was up to the requirements of the contract; and all but the first two of the notes were to bear interest from date, until paid, at the rate of 6 per cent. per annum. The parts of the contract important to be considered here are in the following language:

"The foundations, power house, and material for the same, will be put in place, ready for the apparatus, by the purchaser. They shall be constructed from plans furnished by the Jeffrey Manufacturing Company, and shall meet the approval of the company's engineer. All steam and water connections shall be brought inside the building by the purchaser, and, unless otherwise designated, shall be continued to the apparatus of the purchaser. The Jeffrey Manufacturing Company will furnish expert attendants as follows: Expert to superintend installation and erection of plant, covering a time not to exceed 90 days. The Jeffrey Manufacturing Company guaranty the above apparatus from inherent mechanical and electrical defects of labor and material, and will replace any part shown to be defective within one year from installation. The above apparatus will be delivered in season for starting the plant 90 days from date of approval of this contract."

The contract was executed on the 5th day of June by the complainant, through its executive officer for this purpose, the vice president of the company, and by the defendant. On the next day the president of the complainant began a vigorous and peremptory effort, by correspondence, and by at least one visit to Louisville, to induce the defendant to modify the contract so as to make the notes agreed to be given for the price payable in gold. Otherwise, he demanded that there should be a cancellation of the instrument. So persistent was this effort, that it lasted up to about the 9th of August, 1896, though the defendant, from the beginning to the end of the effort, emphatically declined and refused to consent to any change or alteration of the agreement whatever. Meantime little or nothing was done by either party towards performing the contract, except that a desultory correspondence was carried on between some of the subordinate officers of the respective companies about the plans to be furnished by the complainant. The evidence leaves it uncertain whether there was any great interest manifested on either side to secure a speedy or expeditious execution of the agreement; and the correspondence between the two subordinate officers, so far as could be seen, resulted only in the furnishing by the complainant of a blue-print plan for the foundations and the power house to be constructed for the reception of the machinery. A corrected copy of this seems to have reached the defendant about the 17th day of August, 1896. There is no dispute that the machinery and materials were supplied, nor that they were put in working order at Render by October 14, 1896, and at Central City by the 31st day of the same month. It is admitted, and, indeed, proved by defendants' witnesses, that the machinery and materials were ascertained to be fully up to the requirements of the contract, if not, indeed, superior to those requirements; and, after a thorough test, it was all fully accepted about the 18th of January, 1897.

Analyzing the contract between the parties, and considering it as far as it appears to be important to do so in this case, it will be seen that it required the complainant—First, to furnish the machinery and materials specified; second, to furnish plans for the construction of the foundations and power house; third, to furnish an expert to superintend the installation and erection of the plant, covering a time not to exceed 60 days; fourth, to deliver the apparatus in season for starting the plant 90 days from the approval of the contract; and, fifth, to guaranty the apparatus to be free from defects, etc. On the part of the defendant, it will be seen to require—First, that it put in place, ready for the apparatus, the foundations and power house, and furnish all material for the construction of the same; second, that the construction of the foundations and power house should be done according to plans to be furnished by complainant; and, third, that it should execute to complainant the 30 notes for the purchase money within 60 days from starting the plant. The proof is clear that the machinery and material were furnished by the complainant, but that they were not delivered in season for starting the plant 90 days from June 5, 1896. The proof shows that the machinery and materials furnished were up to contract requirements, and satisfied the guaranty of the complainant. The proof is also clear that the plan for the construction of the foundation and power house was not supplied in accurate form until in August, 1896, and that the expert to superintend the installation and erection of the plant was furnished by the complainant. There can be no doubt, from the evidence, that defendant did not put in place, ready for the apparatus, the foundation and power house which it was to erect, and for which it alone was to furnish the material, until after the 5th day of September, 1896, and that its reason for doing this was largely, if not altogether, based upon the supposition that the correspondence between the presidents of the two companies in reference to a modification of the contract made it unwise for the defendant to proceed in this work, though, of course, some of the delay may have resulted from the failure of the complainant to supply the plans called for by the contract. It is a fact admitted upon the record that the defendant did not execute the notes representing the unpaid part of the price of the machinery and materials. Upon this state of facts, the complainant seeks the judgment of the court for $10,450, being the part of the agreed price which yet remains unpaid, and for which notes were not given, together with interest thereon from the time the notes should have been executed; and, upon the averments of the bill, it also claims a mechanic's lien upon the property described in the pleadings, and prays for a judgment enforcing it. By its answer the defendant seeks to recoup the damages it claims to have sustained by reason of the failure of the complainant to deliver the machinery and material in season for starting the plant 90 days from the 5th of June, 1896. It insists that its failure to construct the foundations and power house was the result of a failure on the part of the complainant to furnish plans, and, furthermore, was particularly the result of the complainant's announce-

ment that it did not intend to perform its part of the contract unless certain alterations of it were agreed to. The defendant also insists in the answer that its damages amounted to the sum of $5,175.03, made up of the various items set forth in that pleading; but on the hearing its counsel abandoned all claims to damages, except the following, namely: The difference in cost of mining coal during parts of September and October, 1896, amounting to $3,106.96; the difference in the cost of hauling, $782; and the difference in the cost of pumping, $138.75; making a total of $4,027.71. It may be proper at this point to say that although mentioned occasionally in general terms by the defendant in its letters to the complainant, beginning with the one dated January 18, 1897, there was no statement of the amount claimed until the letter of December 4, 1897, when it was put at $5,680.71; being the gross amount of damages alleged to have been caused by the delay of 56 days, including Sundays, at Central City, and 39 days, including Sundays, at Render. This claim was for an amount exceeding one-third of the value of the entire machinery and materials furnished by the complainant, and is somewhat discredited by its obvious extravagance. Indeed, the complainant itself has voluntarily diminished it quite $33\frac{1}{3}$ per cent.

The case has been ably argued. The complainant contends that the delay upon its part was the result alike of defendant's fault, and of causes over which it had no control. The opinion of the court is that these contentions are both equally unfounded. The complainant also contends that, if it is liable for any damages, the measure thereof is the fair rental value of the machinery and materials it sold during the time of the delay of delivery beyond September 5, 1896. The defendant, on the other hand, contends: First, that the persistent and somewhat peremptory demand of the complainant for a cancellation of the contract unless the payment in gold clause was inserted in the notes to be given, and particularly in view of the language used in the letters demanding it, showed so much of a purpose (coupled with the delay to furnish plans for the foundations and power house) not to deliver the machinery and material at all as to excuse the defendant, and put upon complainant all the blame for the delay in getting the foundations and power house ready, inasmuch as it was useless, if not foolish, under that view, to erect those structures, if complainant did not intend to supply the machinery; second, that the delay was entirely the fault of the complainant (a proposition that may become important when we consider what delay is referred to,—whether that of the complainant or that of the defendant); and, third, that the measure of damages should be the difference between the cost of the mining of the coal actually taken out of the mines, during the time of the delay after September 5th, by the old pick method, and what would have been the cost of taking it out by the machinery, if it had been delivered according to the contract.

The decision of the court must rest upon the duties of the respective parties under their contract. Those duties were material, and to some extent, at least, mutual and dependent. It was the duty, for

example, of complainant to deliver the machinery and material in season for starting the plant 90 days from June 5, 1896. It was also its duty seasonably to furnish the plans for the structures to be erected by the defendant. Its failure in both respects, in the opinion of the court, as before indicated, was without reasonable or just excuse. Complainant knew as well on the 4th day of June of the public questions involved in the political campaign of 1896 as it did on June 6th; and it should not have executed the contract without intending to perform it faithfully, or else it should have taken its chances by a decided and unequivocal repudiation of it, in which event the defendant's remedy would have been clear and well understood. The court has no difficulty as to these phases of the case, nor any doubt that the defendant had some ground for supposing that it was complainant's purpose not to comply with its agreement, though none, under the rule laid down in Dingley v. Oler, 117 U. S. 503, 6 Sup. Ct. 850, to treat the contract as broken, and none, in fact, for failure upon its part to put itself in position to demand damages while insisting upon performance by complainant. The trouble the court has had has been as to the rights of the defendant. It never for a moment consented to cancel the contract, nor to release the complainant from its obligation thereunder; and, though the machinery and much of the material were tendered after the 5th of September, they were not rejected as coming too late. On the contrary, they were accepted and put into use by the defendant, which still has them all in its possession, and confesses that they are fully up to the contract guaranty and requirement. The stipulation as to time was waived, and the obligation to pay the agreed price was therefore complete, subject to the rule laid down in Construction Co. v. Seymour, 91 U. S. 651, as to the right to recoup the damages if any liability therefor had been incurred by the complainant. The defendant must be held to have waived any right to sue for actual breach of contract, if there was one (which the court does not believe), in the mere acts of the complainant respecting the insertion of the gold clause, and defendant's right must be confined to that of recouping its damages, if any, growing out of other considerations; and the question in that connection is, has the defendant shown a right to damages? As already pointed out, the contract provides that the defendant itself shall construct the foundations and power house. Without these, the machinery and material furnished by the complainant would be unavailable for mining purposes at defendant's mines. The proof is clear that these structures were not completed by the defendant in time to have made it possible to put the machinery in operation by September 5, 1896. This may, indeed, have been because defendant reasonably supposed that the complainant did not intend to comply with the contract; but does that alter the fact that the foundations, etc., were not ready in season, or does it excuse the defendant for that failure when it comes to demand damages? Especially must we consider another question: Does this failure of the defendant entitle it to damages against complainant. or, rather, can the defendant maintain a claim to damages in spite of its failure in this respect? The defendant, it must be remembered,

was insisting that the contract should remain intact. It positively declined to alter, modify, or cancel it. If, in addition, the defendant had in due season performed its part of the work to be done, and which performance was necessarily a condition precedent to the operation of the machinery, the defendant would be in a position to insist, with much greater force, not only upon the measure of damages it contends for, but also upon the consequences of the complainant's delay in furnishing the plans required, and, indeed, upon its delay generally.

The difficulties of the case, as they present themselves to the court, are increased by the circumstances of the failure of the defendant to do promptly what it was required to do in order to make the machinery it was purchasing available for its own beneficial use. The court cannot overlook the fact that the complainant was, without right, insisting upon a change of contract, the troubles about which were as well known the day before it was executed as they were the day afterwards, nor of the other fact that complainant failed to furnish the plans until an inexcusably late date. Possibly time was of the essence of this contract, but it cannot be forgotten that it was as much so respecting the defendant and its duties as it was respecting the complainant and its duties. If the defendant had promptly performed its necessarily precedent work, it could have recovered full damages in case the complainant had entirely failed to perform its obligations. If the defendant had performed its part promptly, then, indeed, the complainant, when it began compliance, might have been able to complete it much sooner than in fact was the case, and thus have greatly diminished the damages. It is therefore impossible to find that either party to this contract so performed its part of the obligations imposed by the writing as to put the blame entirely upon the other, so far as the injuries resulting were concerned, and this fact takes this case out of any well-established rule for measuring the damages. Each party had its duties to perform. Neither party performed its duties in time to make the machinery available to the defendant by September 5th. Whatever may have been the reasons for this on the part of the defendant, the fact nevertheless remains that it did not seasonably prepare the foundations and the structures, although it may have supposed the fault for this to have lain with the complainant. The court is therefore clearly of the opinion that it should not yield to the contention of either side respecting either the criterion or the amount of the damages; but, having reached that conclusion, its difficulties are not altogether solved, because the court cannot avoid the conviction that some wrong was done to the defendant, though by no means so great an injury as the latter suggests. It cannot, indeed, be overlooked that the claim of the defendant for any damages growing out of the delay was very mildly pressed; and, indeed, defendant did not appear really to press it at all until near the close of 1897, although mentioning it in previous letters in general terms, nor then until some irritation in the correspondence between the parties on other matters had been excited, nor until defendant, after a long course of calculation, had figured out a very astonishing result as to the amount of its injuries.

After much reflection upon the case, and without attempting to define with any degree of precision a criterion of damages applicable to a case like the present, where so many of the factors are indefinite and uncertain, and where both sides have manifestly contributed to the difficulties, the court has reached the conclusion that there is enough merit in the claim of the defendant to warrant the court in measuring the damages by the amount of the interest that would have accrued on the notes between January 1, 1897, and January 1, 1899, had they been given, and not paid; and judgment may be rendered for the balance due to the complainant, with interest only from January 1, 1899, until paid, and the costs of the action, and also a judgment enforcing the mechanic's lien set up in the bill.